1   Leland H. Belew (SBN 293096)
    lbelew@milberg.com
2   **MILBERG COLEMAN BRYSON**
    **PHILLIPS GROSSMAN PLLC**
3   227 West Monroe Street, Suite 2100
    Chicago, Illinois 60606
4   Telephone: 312-224-8685
    Facsimile: 865-522-0049
5
    *Attorney for Plaintiffs*
6
    *[Additional counsel on signature page]*
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ROBERT WRIGHT, JACQUELINE          Case No.  5:24-cv-2171
    WRIGHT, JENNIFER SEGARINI,
12  CATHERINE WILSON, EDWARD           **CLASS ACTION COMPLAINT**
    NORRIS, EDWARD PISHCHIK, and
13  WAMIDH JAWAD, individually and on  Breach Of Express Warranty
    behalf of all others similarly situated,
                                       Breach Of Implied Warranty Of
14              Plaintiffs,            Merchantability

15         v.                         Violation Of The Song-Beverly
                                       Consumer Warranty Act For
16                                     Breach Of Express Warranties
    VOLKSWAGEN GROUP OF AMERICA,
17  INC.,                             Violation Of The Song-Beverly
                                       Consumer Warranty Act For
18              Defendant.            Breach Of Implied Warranties

19                                     Violations Of The
                                       Consumer Legal Remedies Act
20
                                       Violations Of California's Unfair
21                                     Competition Law

22                                     Violations Of New York General
                                       Business Law § 349
23
                                       Violations Of New York General
24                                     Business Law § 350

25                                     Violations Of Illinois Consumer
                                       Fraud & Deceptive Practices Act
26
                                       Fraud/Fraudulent Concealment
27
                                       **JURY TRIAL DEMANDED**
28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................I

INTRODUCTION ..................................................................................1

    I.      NATURE OF THE CASE ...........................................................1

    II.     PARTIES ...............................................................................4

    III.   JURISDICTION AND VENUE ..................................................6

FACTUAL ALLEGATIONS ....................................................................6

    I.      PLAINTIFFS' EXPERIENCES ..................................................6

         A.     California Plaintiffs..................................................6

              i.      Plaintiffs Robert & Jacqueline Wright................6

              ii.     Plaintiff Jennifer Segarini ..................................8

              iii.    Plaintiff Catherine Wilson ................................10

              iv.    Plaintiff Zembrzycki .......................................12

         B.     New York Plaintiffs................................................15

              i.      Plaintiff Edward Norris......................................15

               ii.     Plaintiff Edward Pishchik .................................16

         C.     Illinois Plaintiffs...................................................17

              i.      Plaintiff Wamidh Jawad.....................................17

         D.     Putative Class Members.........................................19

              i.      Volkswagen Atlas .............................................19

                      Model Year 2021 ...........................................19

                      Model Year 2022 ...........................................24

                      Model Year 2023 ...........................................32

               ii.     Volkswagen Atlas Cross Sport ...........................34

                      Model Year 2021 ...........................................34

                      Model Year 2022 ...........................................39

i

Model Year 2023 ................................................45

II.    COMMON CLASS ALLEGATIONS ......................................46

    A.    Tolling of the Statute of Limitations.................................49

        i.    Discovery Rule Tolling.....................................49

        ii.    Fraudulent Concealment Tolling ........................49

        iii.    Estoppel..........................................................50

    B.    CLASS ACTION ALLEGATIONS ...........................................50

        i.    Class Definitions.............................................50

        ii.    FRCP 23 Allegations .......................................51

CAUSES OF ACTION .....................................................................57

I.    BREACH OF EXPRESS WARRANTY ...................................57

II.    BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ......59

III.    VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES ............................62

IV.    VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTIES ..............................65

V.    VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT .........68

VI.    VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ..73

VII.    VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 ...76

VIII.    VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 ...79

IX.    VIOLATIONS OF ILLINOIS CONSUMER FRAUD & DECEPTIVE PRACTICES ACT ...................................................................80

X.    FRAUD/FRAUDULENT CONCEALMENT .........................................85

REQUESTS FOR RELIEF ................................................................87

DEMAND FOR JURY TRIAL .............................................................88

ii

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.     Plaintiffs Robert and Jacqueline Wright, Jennifer Segarini, Catherine Wilson, Andreas Zembrzycki (the "California Plaintiffs"), Edward Norris, Edward Pishchik (the "New York Plaintiffs"), and Wamidh Jawad (the "Illinois Plaintiff"; collectively with California Plaintiffs and New York Plaintiffs, "Plaintiffs") by and through counsel, bring this Class Action Complaint against Defendant Volkswagen Group of America, Inc. ("Defendant," "Volkswagen," or "VW"), individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

**I.     NATURE OF THE CASE**

2.     Plaintiffs bring this case individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased Volkswagen's 2021-2024 Atlas and/or Atlas Cross Sport vehicles ("Class Vehicles" or "Vehicles") that were designed, manufactured, distributed, marketed, and sold or leased by Defendant or Defendant's parent, subsidiary, or affiliates thereof.

3.     Defendant designed, manufactured, distributed, marketed, sold, and leased 2021-2024 Atlas and/or Atlas Cross Sport vehicles equipped with defective braking systems as described herein to Plaintiffs and Class Members.

4.     Defendant knew or should have known that the Vehicles have one or more defects manifesting when the brakes are applied during ordinary and intended use, including but not limited to (1) a loud, high-pitched squealing, squeaking, or screeching noise (the "Squealing Defect"),  (2) a loud, grinding, scraping noise of metal rubbing on metal which is occasionally accompanied by a vibrating and scraping sensation that can be felt through the brake pedal (the "Grinding Defect"), (3) an activation of the Vehicle's proximity alert resulting from the Squealing and/or Grinding Defects despite there being no objects within the Vehicle's immediate vicinity (the "Proximity Alert Defect"), and/or (4) slipping, "spongy,"

"grabby," and otherwise inconsistent braking (the "Erratic Function Defect"; collectively with the Squealing Defect, the Grinding Defect, and the Proximity Alert Defect, the "Brake Defect").

5.    The Brake Defect presents numerous safety concerns.

6.    The Squealing Defect is distracting and startling given that it frequently, yet intermittently, causes the Vehicle to emit a loud, high-pitched squealing noise when the brakes are applied, surprising Plaintiffs and other Vehicle drivers, nearby motorists, and nearby pedestrians. Further, due to its startling and distracting nature, the Squealing Defect causes drivers to adjust their braking strategy to minimize the volume and duration of the loud, high-pitched squealing; whether this includes braking harder and shorter, or avoiding braking wherever possible, or some other method, it interferes with the regular, expected, and safe operation of the Vehicles, increasing the risk to all putative class members and their passengers, as well as motorists and pedestrians in the Vehicles' vicinity.

7.    The Grinding Defect is similarly distracting and startling because it unexpectedly produces a loud sound of metal grinding on metal, surprising Plaintiffs and other Vehicle drivers, nearby motorists, and nearby pedestrians. The Grinding Defect also causes Plaintiffs and Class Members to question the viability of the Vehicles' brakes as the sound is often accompanied by a vibrating and grinding sensation felt through the brake pedal. As with the Squeaking Defect, the loud sound caused by the Grinding Defect has the added effect of adversely impacting Vehicle drivers' braking habits and driving decisions.

8.    The Proximity Alert Defect occurs as a result of the Squealing and Grinding Defects, setting off the Vehicles' proximity alert—sometimes referred to as 'parking aid sensors'—when the brakes emit the loud squealing, squeaking, or grinding. The Proximity Alert Defect occurs intermittently, exacerbating its startling nature, and confusing drivers while they are in the midst of slowing their Vehicles. In addition to surprising drivers and distracting them by incorrectly

CLASS ACTION COMPLAINT

indicating there is something near their Vehicle that they were not aware of, the Proximity Alert Defect also introduces safety risks by causing drivers to disregard their Vehicles' proximity alerts even when they may be triggering on an actual person or object.

9.     The Erratic Function Defect also occurs unexpectedly—surprising and distracting drivers—and requires that drivers focus excessively on braking, often at the expense of other road hazards. The Erratic Function Defect also raises safety concerns because it impacts the Vehicles' ability to brake consistently and reliably by causing an uneven, harsh, and "grabbing" sensation as the Vehicles' brakes are applied (which leads Vehicle drivers to reduce the pressure on the brake pedal or otherwise adjust their braking strategy), and/or causing the brakes to feel "spongy" or "squishy" (which leads Vehicle drivers to depress the brake pedal especially hard to achieve the same braking effect).

10.     Amongst the other safety concerns, the Brake Defect is dangerous because it causes Vehicle drivers to disregard sounds and symptoms which are typically affiliated with deteriorating and ineffective brakes. Thus, if Plaintiffs and Class Members accept what they are told by Defendant and VW dealerships when they present the Brake Defect—that it is "normal operation"—they are deprived of the typical warning signs related to deteriorating brakes, namely squealing, grinding, and erratic function.

11.     Although the Vehicles' brakes were specifically and especially designed, manufactured, and approved by Defendant to be installed on the Atlas and Atlas Cross Sport, due to the Brake Defect they do not provide regular, reliable, and safe braking and operation of the Vehicles when used as expected and intended.

12.     As evidenced by Plaintiffs' experiences, and other complaints by Vehicle owners that have been received by the National Highway Safety Administration ("NHTSA"), the Vehicles' Brake Defect manifests at different

mileages and under different driving conditions, including in both reverse and forward and at different speeds. The loud, high-pitched squealing noise, as well as the loud metal-on-metal grinding sound, emitted when the brakes are applied creates a safety hazard due to their likelihood of startling the Vehicle drivers, and thereby having an adverse impact on driving decisions and habits of the Vehicle drivers. In addition, recommendations from Defendant and/or their distributors that Vehicle drivers should alter their braking strategies to mitigate the noise being emitted increases the risk of unsafe "underbraking" or "overbraking" when Vehicle drivers follow Defendant's and/or its authorized dealerships' advice.

13.     The Brake Defect distracts Class Members, other Vehicle drivers, and third parties on the road, endangering their physical safety and well-being due to a loss of concentration and focus while driving. Similarly, nearby pedestrians hear the loud braking noise then pay attention to the noise rather than having their full attention on other hazards in their path.

14.     The unworn brakes on these large, family Vehicles—which had a Manufacturer's Suggested Retail Price beginning at over $30,000, even in 2021— should not squeal, screech, and make other jarring noises when applied as intended and expected. Defendant and its authorized dealerships do not forewarn purchasers despite their knowledge of the Brake Defect.

## II.    PARTIES

15.     Plaintiffs Robert and Jacqueline Wright are California citizens who live in Menifee, in Riverside County, California. The Wrights purchased a 2023 Atlas. This Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

16.     Plaintiff Jennifer Segarini is a California citizen who lives in San Jose, in Santa Clara County, California. Ms. Segarini leased a 2021 Atlas. This Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

CLASS ACTION COMPLAINT

17.     Plaintiff Catherine Wilson is a California citizen who lives in Richmond in Contra Costa County, California. Ms. Wilson purchased a 2021 Atlas Cross Sport. This Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

18.     Plaintiff Andreas Zembrzycki is a California citizen who lives in San Diego County, California. Mr. Zembrzycki purchased a 2021 Atlas. This Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant

19.     Plaintiff Edward Norris is a New York citizen who lives in Smithtown, in Suffolk County, New York. Mr. Norris purchased a 2022 Atlas. This Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

20.     Plaintiff Edward Pishchik is a New York citizen who lives in Brooklyn, in Kings County, New York. Mr. Pishchik leased a 2022 Atlas. This Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

21.     Plaintiff Wamidh Jawad is an Illinois citizen who lives in Lincolnwood, in Cook County, Illinois. Mr. Jawad purchased a 2024 Atlas Cross Sport. This Vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

22.     Defendant Volkswagen Group of America, Inc., is a corporation organized and in existence under the laws of the State of New Jersey with its headquarters located in Herndon, Virginia. At all times relevant herein, Volkswagen was engaged in the business of importing, advertising, marketing, distributing, warranting, servicing, repairing and selling automobiles, including the Vehicles and Vehicle components, throughout the United States of America.

CLASS ACTION COMPLAINT

### III.    JURISDICTION AND VENUE

23.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

24.    The Court has personal jurisdiction over Defendant because Defendant is authorized to, and conducts substantial business in California, generally, and this District, specifically. Defendant has advertised, marketed, promoted, distributed, and sold the Vehicles in California.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District as the Brake Defect in Plaintiffs' Vehicles manifested itself within this District.

26.    To the extent there is any contractual or other impediment to pursuit of these claims on a class action basis, Plaintiffs specifically allege, and will prove, if necessary, that any bar to class action proceedings is unconscionable, unfair and against public policy.

### FACTUAL ALLEGATIONS

### I.    PLAINTIFFS' EXPERIENCES

#### A.    California Plaintiffs

##### i.    Plaintiffs Robert & Jacqueline Wright

27.    The Wrights purchased a 2023 Atlas from VW Santa Monica, an authorized VW dealership in Santa Monica, California, in approximately January 2023.

28.    The Wrights made their decision to purchase a VW Atlas, in part, in reliance on representations communicated through Defendant's advertisements and

marketing campaigns emphasizing the quality, reliability, and safety of Defendant's Vehicles.

29.    At the time of Mr. and Mrs. Wright's purchase, on information and belief, Volkswagen knew that the Vehicles suffered from the Brake Defect, but neither Volkswagen, nor Volkswagen's representatives, disclosed the Defect to the Wrights when advertising or discussing the features, components, and performance of the Vehicle. In reliance on these material omissions and misrepresentations, the Wrights purchased and operated the Vehicle on the belief that the Vehicle's brakes would operate properly as warranted.

30.    Within days of their purchase, the Wrights' Vehicle intermittently began exhibiting various issues when they applied the brakes, including loud squealing, squeaking, and screeching noises, as well as emitting a metal-on-metal grinding or grating sound, occasionally triggering of the Vehicle's proximity alert sensors despite the absence of any objects in the Vehicle's proximity (which sets off audio and visual alerts in the car and on the instrument clusters.

31.    The Wrights' Vehicle also began demonstrating inconsistent function, sometimes engaging too strongly or harshly.

32.    The Vehicle began exhibiting the various symptoms of the Braking Defect—whether Squealing, Grinding, Proximity Alert, Erratic Function, or a combination of them—nearly every time it was driven. Thus, the Wrights brought the Vehicle to Volkswagen of Murrieta, an authorized Volkswagen dealership in Murrieta, California, to seek a remedy.

33.    A service technician at Volkswagen of Murrieta acknowledged that the Wrights' concerns were "pretty common," and that he even had personal experience with this problem, but there was not any remedy other than purchasing new and different brakes to replace those equipped on the Wrights' brand-new Vehicle.

CLASS ACTION COMPLAINT

34.     The Braking Defect continued to be such a concern that the Wrights again raised it at a subsequent visit to Murrieta Volkswagen. After insisting that an inspection at least be performed, service technicians at Volkswagen of Murrieta verified the Wrights' concerns, informed the Wrights that the Brake Defect is "normal operation" for the Vehicles, and attempted to address the problem with sandpaper and a lubricant, despite explicitly acknowledging that this would be a temporary, short-term solution. As anticipated, the Brake Defect was not resolved and its symptoms reappeared within weeks.

35.     Neither Volkswagen nor any of its agents, dealers, or representatives informed the Wrights of the Brake Defect prior to their purchase of the Vehicle.

36.     Had Mr. or Mrs. Wright been advised of the Brake Defect at or before the point of sale, they would not have purchased their Vehicle or else would have paid significantly less for the Vehicle.

37.     The Wrights did not receive the benefit of their bargain.

### ii.      Plaintiff Jennifer Segarini

38.     Ms. Segarini leased her 2021 Atlas from Capital Volkswagen, an authorized VW dealership in San Jose, California, on or about July 29, 2021.

39.     Ms. Segarini made her decision to lease a VW Atlas, in part, in reliance on representations communicated through Defendant's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of Defendant's Vehicles.

40.     At the time of Ms. Segarini's lease, on information and belief, Volkswagen knew that the Vehicles suffered from the Brake Defect, but neither Volkswagen, nor Volkswagen's representatives, disclosed the Defect to Ms. Segarini when advertising or discussing the features, components, and performance of the Vehicle. In reliance on these material omissions and misrepresentations, Ms. Segarini leased and operated the Vehicle on the belief that the Vehicle's brakes would operate properly as warranted.

CLASS ACTION COMPLAINT

41.    Before leasing her Vehicle, Ms. Segarini test drove it. At the time of her test drive and purchase, she had no forewarning of the Brake Defect.

42.    Beginning within the first three months of her lease, the brakes on Ms. Segarini's Vehicle began squeaking horribly, and emitting a metal-on-metal grinding or "scraping" sound, whenever they were applied.

43.    On some occasions, when applying the brakes during normal operation, she has experienced the brakes skipping, and not braking firmly and consistently, while emitting a loud metal-on-metal sound.

44.    Ms. Segarini has taken her Vehicle to authorized VW dealerships on several occasions in an attempt to address the Brake Defect. However, none of these visits resolved the Brake Defect; to the contrary, Ms. Segarini has been told in various ways that there is no resolution available.

45.    Initially, Ms. Segarini was told by a VW service technician that her issues were caused by the type of gasoline she used, and if she used more expensive "premium" gasoline, she would not have the issues.  Ms. Segarini followed this advice, but it had no impact on the Brake Defect.

46.    Ms. Segarini was subsequently informed that the "cheap gasoline" diagnosis was just part of a "script" that VW service technicians are required to use; that VW service technicians must propose "solutions" to the Brake Defect in a certain sequence which forces customers to return multiple times to VW dealerships, with repeated but unresolved complaints about noisy and defective brakes.

47.    On another occasion, Ms. Segarini was told by a VW service technician that "VW went cheap" with the brake pads equipped in the Atlas, and that if she had purchased "deluxe" it would have better brake pads which would not squeak.                                        ,

48.    At one point a VW service technician advised that Ms. Segarini might address some of the symptoms by pressing down especially hard on the brake in order to misshape, deform, and "rough up" the brake rotors to provide greater grip.

49.    Ultimately, VW service technicians have advised Ms. Segarini that even if they were to replace the brake pads they would suffer from the same issues and it would not resolve her concerns.

50.    Neither Volkswagen nor any of its agents, dealers, or representatives informed Ms. Segarini of the Brake Defect prior to her lease of the Vehicle.

51.    Had Ms. Segarini been advised of the Brake Defect at or before the point of sale, she would not have leased her Vehicle or else would have paid significantly less for the Vehicle.

52.    Ms. Segarini did not receive the benefit of her bargain.

### iii.    Plaintiff Catherine Wilson

53.    Ms. Wilson purchased her 2021 Atlas Cross Sport certified pre-owned from Volkswagen of Newark, an authorized VW dealership in Newark CA, California, on or about December 17, 2022.

54.    Ms. Wilson made her decision to purchase a VW Atlas Cross Sport, in part, in reliance on representations communicated through Defendant's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of Defendant's Vehicles.

55.    At the time of Ms. Wilson's purchase, on information and belief, Volkswagen knew that the Vehicles suffered from the Brake Defect, but neither Volkswagen, nor Volkswagen's representatives, disclosed the Defect to Ms. Wilson when advertising or discussing the features, components, and performance of the Vehicle. In reliance on these material omissions and misrepresentations, Ms. Wilson purchased and operated the Vehicle on the belief that the Vehicle's brakes would operate properly as warranted.

CLASS ACTION COMPLAINT

56.     Before purchasing her Vehicle, Ms. Wilson test drove it. At the time of her test drive and purchase, she had no forewarning of the Brake Defect.

57.     Shortly after her purchase, the brakes on Ms. Wilson's Vehicle began emitting a loud, high-pitched squealing noise, as well as the sound of metal-on-metal grinding, when they were applied.

58.     Additionally, Ms. Wilson felt that she needed to press especially hard on her brakes to achieve an appropriate braking force, because they were "squishy," and sometimes it felt as though the brakes were not engaging consistently, but were slipping, and grabbing harshly when they did apply.

59.     Ms. Wilson has taken her Vehicle to authorized VW dealerships on multiple occasions in an attempt to address the Brake Defect. However, none of these visits resolved the Brake Defect.

60.     Initially, when presenting her Vehicle at Volkswagen of Newark for its regular oil change, she mentioned her experiences of grinding sounds when braking. However, the VW service technicians dismissed her concerns and said, "everything is fine."

61.     Approximately three months later, when presenting her vehicle for another regular oil change—this time at Volkswagen of Hayward, an authorized VW dealership in Hayward, California—she was informed that the brakes were so badly worn out that they had to be replaced immediately.

62.     Therefore, as directed by the VW service technicians, in or around April 2024, Ms. Wilson paid more than $800 to have her brake pads replaced. Despite this replacement, however, the brakes on Ms. Wilson's Vehicle continues to exhibit symptoms of the Brake Defect by emitting a loud, high-pitched squeal when applied, and by requiring that Ms. Wilson press harder than usual to achieve a regular braking force.

63.     Neither Volkswagen nor any of its agents, dealers, or representatives informed Ms. Wilson of the Brake Defect prior to her purchase of the Vehicle.

64. Had Ms. Wilson been advised of the Brake Defect at or before the point of sale, she would not have purchased her Vehicle or else would have paid significantly less for the Vehicle.

65. Ms. Wilson did not receive the benefit of her bargain.

### iv.      **Plaintiff Zembrzycki**

66. Mr. Zembrzycki purchased his 2021 Atlas from Ontario Volkswagen, an authorized VW dealership in Ontario, California, in February 2024.

67. Mr. Zembrzycki made his decision to purchase a VW Atlas, in part, in reliance on representations communicated through Defendant's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of Defendant's Vehicles.

68. At the time of Mr. Zembrzycki's purchase, on information and belief, Volkswagen knew that the Vehicles suffered from the Brake Defect, but neither Volkswagen, nor Volkswagen's representatives, disclosed the Defect to Mr. Zembrzycki when advertising or discussing the features, components, and performance of the Vehicle. In reliance on these material omissions and misrepresentations, Mr. Zembrzycki purchased and operated the Vehicle on the belief that the Vehicle's brakes would operate properly as warranted.

69. Before purchasing his Vehicle, Mr. Zembrzycki test drove it. At the time of his test drive and purchase, he had no forewarning of the Brake Defect.

70. Shortly after the purchase, Mr. Zembrzycki's Vehicle intermittently began exhibiting various issues when he applied the brakes, including loud squealing, squeaking, and screeching noise, as well as emitting a metal-on-metal grinding or grating sound, both of which would trigger the Vehicle's proximity alert approximately 90% of the time a sound was made. Triggering of these sensors means that a battery of audio and visual alerts are popping up and going off in the car and on the instrument clusters and that on top of the obnoxious sounds from the brakes, these events on aggregate create a very stressful and unsafe environment

when operating the car. What instead should happen is that a car simple should decelerate when engaging its brakes. Every passenger in the car, as well as persons outside of the car are able to notice this, which creates an unsafe, unsatisfactory, and embarrassing driving experience.

71.    On some occasions, the Vehicle's proximity alert sensors triggered so severely—indicating that a collision was extremely imminent —that the Vehicle's emergency brake applied automatically, despite no objects being in the vicinity.

72.    Mr. Zembrzycki's Vehicle also began demonstrating inconsistent function, sometimes engaging too strongly or harshly, and other times feeling "spongey" or less effective.

73.    The Vehicle began exhibiting the various symptoms of the Braking Defect—Squealing, Grinding, Proximity Alert, and Erratic Function—nearly every time Mr. Zembrzycki drove until, on or around July 15, 2024, he brought the Vehicle to Mission Bay Volkswagen, an authorized Volkswagen dealership in San Diego, California.

74.    Service technicians at Mission Bay Volkswagen first feigned ignorance regarding the Brake Defect. However, after Mr. Zembrzycki insisted that the dealership keep the Vehicle overnight for a test-drive, the dealership confirmed the Brake Defect. Volkswagen's service technicians nevertheless stated that nothing could be done to resolve Mr. Zembrzycki's concerns under warranty, and that any replacement of brake components would have to be paid for by Mr. Zembrzycki.

75.    Service technicians at Mission Bay Volkswagen also asked for videos demonstrating the Grinding, Squealing, and Proximity Alert Defects. But when Mr. Zembrzycki provided the requested videos, they informed him that these were normal operation for the Vehicles. Mr. Zembrzycki responded that this is not normal operation, subsequently the dealership advised that  any recourse would have to be pursued with Defendant Volkswagen, directly.

76.    Notably, although Mr. Zembrzycki described the Squealing Defect and Proximity Alert Defect and the inadequately triggered emergency braking occurrences to the Mission Bay Volkswagen service technicians at the same time he raised the Grinding Defect (i.e., during his July 2024 visit), only his complaints regarding the Grinding Defect were recorded in the service records.

77.    At approximately the end of July, 2024, Mr. Zembrzycki attempted to follow the dealership's directions and raise his concerns with VW's corporate office. When he did, however, he faced similar barriers to any resolution. First, he had trouble getting ahold of any service representative at all. Then, when he was finally able to speak with someone he was only provided a generic statement which, on information and belief, was read from a script or template developed to respond to concerns about the Brake Defect. Ultimately, Mr. Zembrzycki was told that his concerns were "within normal parameters" and no remedy would be provided.

78.    Mr. Zembrzycki requested VW's response in writing, which was provided a couple of days later, confirming that Defendant VW would take no action, but claiming that "[t]o provide you with the best service possible, it's important that you respond to us by replying to this email."  Mr. Zembrzycki did so on the same day, August 9, explaining that the Brake Defect was not "within acceptable normal range on what is to be expected from brakes," "that the noise from the brakes is triggering the vicinity sensory all around the car in ~90% of instances, although NO object is any way near the vehicle," and that this is "a significant safety hazard." Mr. Zembrzycki has not received any response.

79.    Neither Volkswagen nor any of its agents, dealers, or representatives informed Mr. Zembrzycki of the Brake Defect prior to his purchase of the Vehicle.

80.    Had Mr. Zembrzycki been advised of the Brake Defect at or before the point of sale, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle.

81.     Mr. Zembrzycki did not receive the benefit of his bargain.

**B.     New York Plaintiffs**

    **i.     Plaintiff Edward Norris**

82.     Mr. Norris purchased his 2022 Atlas from Smithtown Volkswagen, an authorized Volkswagen dealership in St. James, New York, on or about July 27, 2022.

83.     Mr. Norris made his decision to purchase a VW Atlas, in part, in reliance on representations communicated through Defendant's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of Defendant's Vehicles.

84.     At the time of Mr. Norris's purchase, on information and belief, Volkswagen knew that the Vehicles suffered from the Brake Defect, but neither Volkswagen, nor Volkswagen's representatives, disclosed the Defect to Mr. Norris when advertising or discussing the features, components, and performance of the Vehicle. In reliance on these material omissions and misrepresentations, Mr. Norris purchased and operated the Vehicle on the belief that the Vehicle's brakes would operate properly as warranted.

85.     Before purchasing his Vehicle, Mr. Norris test drove it. At the time of his test drive and purchase, he had no forewarning of the Brake Defect.

86.     Shortly after purchasing the Vehicle, the brakes began emitting loud, obnoxious, and distracting sounds of metal-on-metal grinding. Sometimes accompanying these other sounds was the sound of gurgling.

87.     Mr. Norris has taken his Vehicle to authorized VW dealerships—both Smithtown Volkswagen and Volkswagen of Huntington, in Huntington Station, New York—approximately ten different times in an attempt to address the Brake Defect. However, none of these visits resolved the Brake Defect; to the contrary, Mr. Norris has been told in various ways that there is no resolution available.

CLASS ACTION COMPLAINT

88.    On one occasion Mr. Norris was informed that the loud sounds emitting from his brakes were "entirely normal" because "this is what happens with a ceramic brakes system."

89.    On other occasions, however, VW service technicians have agreed that it is not normal operation and have attempted resolutions including reservicing the brakes, soaking them in solution, and attempting to address premature rust. None of these attempts have been successful.

90.    Neither Volkswagen nor any of its agents, dealers, or representatives informed Mr. Norris of the Brake Defect prior to his purchase of the Vehicle.

91.    Had Mr. Norris been advised of the Brake Defect at or before the point of sale, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle.

92.    Mr. Norris did not receive the benefit of his bargain.

### ii.    <u>Plaintiff Edward Pishchik</u>

93.    Mr. Pishchik leased his 2022 Atlas from Douglas Volkswagen, an authorized Volkswagen dealership in Summit, New Jersey, on or about January 21, 2022.

94.    Mr. Pishchik made his decision to lease a VW Atlas, in part, in reliance on representations communicated through Defendant's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of Defendant's Vehicles.

95.    At the time of Mr. Pishchik's lease, on information and belief, Volkswagen knew that the Vehicles suffered from the Brake Defect, but neither Volkswagen, nor Volkswagen's representatives, disclosed the Defect to Mr. Pishchik when advertising or discussing the features, components, and performance of the Vehicle. In reliance on these material omissions and misrepresentations, Mr. Pishchik leased and operated the Vehicle on the belief that the Vehicle's brakes would operate properly as warranted.

96.    Before leasing his Vehicle, Mr. Pishchik test drove it. At the time of his test drive and lease, he had no forewarning of the Brake Defect.

97.    Shortly after leasing his Vehicle, Mr. Pishchik started experiencing the Braking Defect.  Specifically, his vehicle would regularly—but erratically—emit a loud, high-pitched squealing and squeaking, as well as a grinding or grating sound of metal-on-metal. Accompanying these other sounds was sometimes the sound of gurgling, or rushing water.

98.    Along with the incessant, distracting, and concerning sounds they emit, the brakes on Mr. Pishchik's Vehicle also require an unusual amount of force applied to achieve the same braking power, as though they are "squishy."

99.    Mr. Pishchik has taken his Vehicle to Bay Ridge Volkswagen, an authorized VW dealership in Brooklyn, New York, in an attempt to address the Brake Defect. The VW dealership was unable to resolve the issues, or address Mr. Pishchik's concerns.

100.    In fact, a VW service technician informed Mr. Pishchik that his concerns regarding the brakes "seem to be normal with these models," and advised him that his only avenue for relief would be to raise it with Volkswagen directly.

101.    Neither Volkswagen nor any of its agents, dealers, or representatives informed Mr. Pishchik of the Brake Defect prior to his purchase of the Vehicle.

102.    Had Mr. Pishchik been advised of the Brake Defect at or before the point of sale, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle.

103.    Mr. Pishchik did not receive the benefit of his bargain.

**C.    Illinois Plaintiffs**

     **i.    Plaintiff Wamidh Jawad**

104.    Mr. Jawad purchased his 2024 Atlas Cross Sport from City Volkswagen of Evanston in Evanston, Illinois, on or about March 30, 2024.

CLASS ACTION COMPLAINT

105.   Mr. Jawad made his decision to purchase a VW Atlas Cross Sport, in part, in reliance on representations communicated through Defendant's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of Defendant's Vehicles.

106.   At the time of Mr. Jawad's purchase, on information and belief, Volkswagen knew that the Vehicles suffered from the Brake Defect, but neither Volkswagen, nor Volkswagen's representatives, disclosed the Defect to Mr. Jawad when advertising or discussing the features, components, and performance of the Vehicle. In reliance on these material omissions and misrepresentations, Mr. Jawad purchased and operated the Vehicle on the belief that the Vehicle's brakes would operate properly as warranted.

107.   Before purchasing his Vehicle, Mr. Jawad test drove it. At the time of his test drive and purchase, he had no forewarning of the Brake Defect.

108.   However shortly after purchasing his Vehicle, a loud and high-pitched squealing emitted whenever Mr. Jawad applied the brakes.

109.   Mr. Jawad raised the issue with City Volkswagen of Evanston immediately in an attempt to address the Brake Defect. However, Mr. Jawad was told only that these sounds were common in the Vehicles and offered no resolution or relief.

110.   Neither Volkswagen nor any of its agents, dealers, or representatives informed Mr. Jawad of the Brake Defect prior to his purchase of the Vehicle.

111.   Had Mr. Jawad been advised of the Brake Defect at or before the point of sale, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle.

112.   Mr. Jawad did not receive the benefit of his bargain.

,

CLASS ACTION COMPLAINT

**D.** **Putative Class Members**

    i.    **Volkswagen Atlas**

*__Model Year 2021__*

113. <u>NHTSA Complaint regarding a 2021 ATLAS, dated 8/1/2022</u>: Brakes are making loud squeaking and grinding noises when brake is applied at low speeds. It feels like the entire braking system is about to fall apart. ***Took the vehicle to the Volkswagen dealership and they said Volkswagen brakes are know to make noise.*** I told them at the dealership, online customer support chat, and phone customer support that this should not be happening on a brand new vehicle. They said there is nothing they can do about it. ***The sounds are very loud even with all the windows up, it's like an old car. I can hear the brakes squeak from a third floor building***. (ID No. 11483920; emphasis supplied)

114. <u>NHTSA Complaint regarding a 2021 ATLAS, dated 9/29/2022</u>: The brakes make loud squealing and grinding noises and don't feel like they are properly functioning when attempting to stop. ***I rolled through a stop sign when they were grinding loudly last week because the brakes would not engage. I immediately scheduled to have it diganosed again. I have had it diagnosed by VW 3 times and also contacted VW corporate and they have all stated to me that it is a known issue with the brakes on VW atlas and have had 1000s of complaints and will do*** nothing to repair or resolve the situation. They said they know it is an issue and not correct and they will not be

1      doing anything to correct the situation or make sure the

2      vehicle is safe." (ID No. 11487219; emphasis supplied)

3   115.   NHTSA Complaint regarding a 2021 ATLAS, dated 2/15/2022:

4      The front brake rotors on this VW model are faulty and

5      unsafe from the factory and need to be recalled. They

6      warp and squeal, and the issue seems to be starting at

7      about 4 months. The brake rotors warp between 4-6

8      months and the front brakes start to vibrate when driving

9      at 65 mph or more. The brake pads are fine, however the

10     rotors need to be replaced. The rotors need to be

11     inspected as they appear to be made out of inferior

12     material/metal.   The VW dealership refused to replace

13     the rotors under warranty and I had to pay for the

14     replacement. I contacted VW USA, but they were not

15     helpful at all.  [XXX] VW Bensenville, IL  Based on my

16     research through different VW online forums, there's a

17     lot of people that were having the same issue.

18     INFORMATION Redacted PURSUANT TO THE

19     FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C.

20     552(B)(6). (ID No. 11491172)

21   116.   NHTSA Complaint regarding a 2021 ATLAS, dated 3/27/2023:

22     We just purchased a certified pre-owned vehicle from the

23     dealership.  Since we've had the vehicle, it produces a

24     loud squeaking sound when braking.  We took it to a

25     brake shop and were advised the rear brakes get so hot

26     and are glazed over and need to replace the rotors.  When

27     I look online I see this is a common problem for this

28

CLASS ACTION COMPLAINT

vehicle and that the manufacturer has done nothing to get it fixed. (ID No. 11514028)

117. <u>NHTSA Complaint regarding a 2021 ATLAS, dated 6/28/2023</u>: The brakes make a deep grinding sound every 4000-8000 miles. A typical sound of failing brakes. When I took the vehicle into the dealership they let me know they have a defective brake pad system. When they changed the compound in 2019/2020 this has been an issue. The pads are showing in good acceptable range. However ***when driving the vehicle you do not know if it is safe or not*** unless you take the vehicle in to make sure l. Again every 4000-8000 miles. I do not see how they are able to sell you a car with a known issue and not disclose this. This should be covered or recalled. ***It absolutely is a safety issue when you cannot tell if your brakes are working properly! They are telling me they see 4-5 people a week with the same issue***. How is this not being recalled! (ID No. 11529687; emphasis supplied)

118. <u>NHTSA Complaint regarding a 2021 ATLAS, dated 7/8/2023</u>: Within a week of our purchase of a brand new atlas, we started hearing squeaking and grinding noises with the front brakes. I've taken it into multiple dealerships for them to inspect and ensure the safety, and I'll have given me the same spiel, that the brakes are working just fine. ***The grinding noise is clearly beyond normal and I'm concerned for my family safety***. (ID No. 11531086; emphasis supplied)

119. <u>NHTSA Complaint regarding a 2021 ATLAS, dated 10/22/2023</u>:

21

CLASS ACTION COMPLAINT

I leased my VW ATLAS in Feb. 2021. Since then the vehicle has been in for service many times because the brakes squeak, grind and gurgle. ***They even had to replace the whole front end braking system in spring of 2022. Even with the replacement, the brakes are yet again squeaking, grinding and gurgling.*** The service department at VW has acknowledged that this is a problem with many Atlases and does not seem to care and has told me that they just make that noise and that the brakes are functional and pose no safety risk. This I am weary of. (ID No. 11551226; emphasis supplied)

120. <u>NHTSA Complaint regarding a 2021 ATLAS, dated 11/7/2023</u>: When the car is just started a horrible braking/grinding noise when trying to stop  The brakes eventually stop grinding and starts making a screeching noise when coming to a stop ***It does feel safe at all Dealer states this is normal*** It is not normal for any car This happens daily (ID No. 11553995; emphasis supplied)

121. <u>NHTSA Complaint regarding a 2021 ATLAS, dated 11/29/2023</u>: A few weeks after we purchased the vehicle from the dealership, the brakes started making loud metallic noises and grinding. The vehicle was taken to the dealership where ***they replaced the brakes and then the issue occurred again just a few weeks after that repair***. We continue to take the car back to the dealership and they now just keep telling us that there are no issues. I called Volkswagen directly and they sided with the dealer. At this point I have a vehicle that keeps having the same

persistent issue. I did my own research and found that there are several other Atlas owners that are encountering the same issue in 2021+ models. This is a known issue and Volkswagen refuses to do anything about it. ***I have 2 kids and have do not feel confident in my cars brakes when they are in there.*** (ID No. 11557510; emphasis supplied)

122.  NHTSA Complaint regarding a 2021 ATLAS, dated 10/21/2023: The breaks are very loud- squeaky and grinding. Have had them checked several times and break pads are in good condition. Additionally after the car is idle for several hours, it'll be a loud gurgle when breaks are applied the first few "stops". Additionally, when driving in cold weather the rear the stability assist light on the dash will engage. It will flash on and off so to be uncertain if the traction control is engaged on possible slippery roads (ID No. 11560572)

123.   NHTSA Complaint regarding a 2021 ATLAS, dated 10/22/2021: Since purchasing the car new, my brakes squeal and make a grinding noise. They don't stop well and the noise doesn't stop until I drive the car for a while. This happens every time I drive my vehicle. ***I have taken it to VW service and they say that it is normal for those kinds of brakes***. (ID No. 11561753; emphasis supplied)

124.  NHTSA Complaint regarding a 2021 ATLAS, dated 1/29/2024: yes when start the car and drive from 0-20 mph from the start you will hear a lound noise when applying the brake

and now getting louder and louder everywhere you drive the vehicle. ***took it in the dealer 2-3 time and they are telling me is manufactures design***. don't have this problem from day one I purchase the vehicle but now after 40k. miles start this problem specially brake, ***its scare me to drive the vehicle***.. please, advise. Thank you.. (ID No. 11576673; emphasis supplied)

### ***Model Year 2022***

125. <u>NHTSA Complaint regarding a 2022 ATLAS, dated 10/26/2022</u>: Brakes are very squeaky and sound like grinding metal when in use. ***This happens every day for the past year regardless of weather or moisture.*** Most recently they have started skipping. I can feel the break pedal pulsing as if the brakes are bouncing and the car "skids". This morning I was coming out of my driveway, around 3 mph, and a vehicle passed by so I pressed the brakes and the car still moved out into the street. ***This is going to cause a crash at some point if the brakes are not stopping the vehicle as intended by the driver***. (ID No. 11490949; emphasis supplied)

126. <u>NHTSA Complaint regarding a 2022 ATLAS, dated 10/3/2022</u>: I have a 2022 Volkswagen atlas with 15k miles on it. My brakes are making a hard sweeping noise when braking. It has been happening for a few weeks now. When I start to push on the breaks no matter the type of weather, it sounds like it is metal on metal. I do not know if it is the calipers sticking or if it is something more. (ID No. 11492483)

CLASS ACTION COMPLAINT

127. NHTSA Complaint regarding a 2022 ATLAS, dated 1/22/2023:
Brakes are always squeaky and making grinding noises
for the first 10 minutes of every drive. Brake pedal is also
squeaky. **Was brought to dealership two times and told
that it's normal**. (ID No. 11503013; emphasis supplied)

128. NHTSA Complaint regarding a 2022 ATLAS, dated 2/28/2022:
Brand new Atlas has the worst brake pads/rotors!
Screech & squeal incessantly in reverse and when
braking. **Dealer has said this is "normal" and is not
under warranty**. Drive to and from work every day and
this happens each time within the first 10 minutes of
starting the car. (ID No. 11508332; emphasis supplied)

129. NHTSA Complaint regarding a 2022 ATLAS, dated 12/1/2022:
We purchased this vehicle new in 2022, since the
purchase, we have taken the car in for defective brakes
and brake noise. **2 different dealerships have resurfaced
the rotors and brake pads for a total of 3 resurfaces and
the noise ( grinding like metal on metal ) still exists**. We
have contacted VolkswagenUSA and they are not able to
tell us what is causing the noise and want us to pay 10%
of the repair costs event thought this issue has been going
on during the warranty period. Thank you (ID No.
11515533; emphasis supplied)

130. NHTSA Complaint regarding a 2022 ATLAS, dated 5/1/2023:
The brakes squeak and grid a lot. During the rain the
brakes do not stop fast at the first apply and they don't
perform well, because a lot of debris from the brake pads
are stuck at brake system. **VW Certified Technician**

***stated that it is manufacturer defective brake system
and it needs replacement but they refused to replace it
under warranty.*** This issue was stated by me from the
first week I bought this vehicle. (ID No. 11520478;
emphasis supplied)

131.    NHTSA Complaint regarding a 2022 ATLAS, dated 8/1/2023:
The breaks make a horrible grinding and squeak sound.
***Feels unsafe to drive car***. (ID No. 11536622; emphasis
supplied)

132.    NHTSA Complaint regarding a 2022 ATLAS, dated 1/6/2022:
The vehicle brakes sound like metal v metal, grinding
and squeaking. ***The dealership says that its a known
problem but they have no fix. This concerns me when
driving***. (ID No. 11544415; emphasis supplied)

133.    NHTSA Complaint regarding a 2022 ATLAS, dated 7/1/2022:
Brakes make a HORRIBLE METAL TO METAL,
screeching, sharp noise when breaking. Just knowing the
money that was paid for this vehicle and as I drive and
brake at my children school it sounds like a cheap made
vehicle. Something may be done because the sound the
brakes make us truly unacceptable. I can't believe
Volkswagen has not come up with a fix. A lot of people
are having issues with it. They need to resolve it for all of
us Volkswagen Atlas owners. (ID No. 11547447)

134.    NHTSA Complaint regarding a 2022 ATLAS, dated 10/26/2023:
Roughly 60 days after we purchased our Atlas the brakes
started squealing, grinding, and when its wet or raining, it
is nearly impossible to stop the vehicle without slamming

CLASS ACTION COMPLAINT

the brakes so hard that the anti-lock braking system engages.  This is a safety hazard/concern.  We contacted the dealership where we purchased the vehicle (out of state) and they said this was standard and not to worry.  This was mentioned at our first service at our local VW dealership and we were again told that this was normal and that the brake pads were wearing just fine.  The safety concern was not addressed, nor is this normal.  At our second service appointment, we asked that these be checked again and for them to address the difficulty in stopping during wet conditions.  Same response, this is normal and brakes are not covered under warranty.  We have since contacted the original selling dealership who lined up another service appointment with our local VW dealership, and again, we received the same answer as before.  We do have audio/video of the squealing and grinding noises, and again, we have been told this is standard, and its a known problem with the VW Atlas.  There are many other complaints similar to this.  This should reach the level of a recall before something catastrophic happens and someone loses their life over it.  I/we as owners of this type vehicle should not have to spend thousands of dollars replacing brakes shortly after purchasing this type of vehicle. (ID No. 11552287; emphasis supplied)

135.  NHTSA Complaint regarding a 2022 ATLAS, dated 5/15/2023:

1. Dealer has accepted the problem and indicated they are unable to do anything, that all Atlas do the brake

screetching and sensors going off with no reason.  2. Brakes- Everytime at starting the car in the morning or around 15 to 30 minutes after use (parked), they screech and it feels as if the pads slide and not truly break. This happens always along with a water-like gargling sound. The screeching also makes the sensors go off. ***The concern is the safety as you can feel the breaks do not respond the same when this happens vs after using three or four stops. You can feel and hearvhow the pads slide and the car has difficulty breaking***.  2. The left side sensors of the mirror and side of car go off random and it is annoying to say the least. The safety issue is that when you are driving, reaching a stop and they go off, it can somewhat scare you and you then hit the breaks thinking something is really there being sensed by the sensors. This could cause an accident.  I have videos of the sensors problem showing how even though there is nothing around, they go off. I alao have videos of the breaks making the noice. (ID No. 11558524; emphasis supplied)

136.   <u>NHTSA Complaint regarding a 2022 ATLAS, dated 12/2/2023</u>: My brakes have been making a weird sound when I break and at times grind as if the brakes need to be changed. I have taken my car to be serviced for this issue and ***they tell me that my brakes are great with no issues. That the Atlas have that issue but it's normal.*** .*There are times that it seems my brakes fail. This poses a safety risk for*

*me and my family* (ID No. 11559066; emphasis

supplied)

137.  NHTSA Complaint regarding a 2022 ATLAS, dated 12/27/2023:

brand new car of VW 2022 Atlas Premium, but, with the

brake grinding noise issue from starting driving this

brand new car.  The dealer acknowledged this noise

issue, but, stated no safety issue, and asked me to call

VW directly. We called VW directly, they said, no safety

issue. We questioned we spent about $60k for this brand

new car, why having such extremely brake noise from

driving from day #1 , why the manufacture and dealer did

not take care and fix this issue? and *such grinding noise*

*made my wife not dare to press the brake hardly. Such*

*noise made the driver feel so scared, and this scare*

*potentially cause the safety issue*. (ID No. 11562139;

emphasis supplied)

138.  NHTSA Complaint regarding a 2022 ATLAS, dated 1/1/2024:

When I start driving the vehicle after it has been sitting

for a little while (anywhere between a couple hours to

overnight), the first few times I use the brakes, it sounds

and feels like the brakes are grinding. There is a loud

metallic grinding noise until I come to a full stop. This

will last for several miles, and eventually go away. At the

same time it does this, the driver side alert (cameras) start

beeping like crazy. I have taken it in once as it started

very shortly after I got the car and *they replaced the*

*brakes* to appease me even though they said everything

looked perfectly fine. They also said the sensors for the

camera just needed cleaning off. ***All of this started happening again about 6 months later***. In addition, I also have issues with the car shutting off whenever it feels like it and requiring a manual restart, In the middle of intersections, etc. (ID No. 11564030; emphasis supplied)

139. NHTSA Complaint regarding a 2022 ATLAS, dated 8/13/2013: "Very loud grinding noises and squeaking especially in the mornings when you use the brakes. (ID No. 11565101)"

140. NHTSA Complaint regarding a 2022 ATLAS, dated 1/14/2024: "Breaks grind as if they are  used up but vehical is new and shouldnt have run through the pad so quickly  Breaking becoming harder to stop (ID No. 11565491)"

141. NHTSA Complaint regarding a 2022 ATLAS, dated 2/8/2024: The brakes make an awful grinding noise that sounds like metal on metal  . When braking the collision alert system will go off as if a crash is inevitable like no one is braking. ***I have had pedestrians flag me down and tell men that the noise is a brake rotor issue and that the pads must be completely gone cause they have never heard them sound that bad. The dealer claims they are fine and it is a know issue*** and safe even if the collision alert system goes off unnecessarily. The ***most dangerous thing is the lack of interest they have in investigating the problem***. (ID No. 11572822; emphasis supplied)

142. NHTSA Complaint regarding a 2022 ATLAS, dated 1/19/2024: There needs to be a recall on all 2022 Volkswagen Atlas. There is a major issue with the braking system that if goes unaddressed, will cause accidents. There are many,

1    many people complaining about it and I'm guessing until

2    we start seeing deaths related to it, nothing will get done.

3    The braking system is grinding, squealing and jumping

4    when attempting to brake. This is going to continue to get

5    worse until something gets fixed. (ID No. 11574437)

6    143.    NHTSA Complaint regarding a 2022 ATLAS, dated 1/2/2024:

7    vehicle has recurring noise when braking, sounds like a

8    grinding.  There is also a gurgling noise when stopping

9    coming from the engine compartment on the driver's

10    side. (ID No. 11575866)

11    144.    NHTSA Complaint regarding a 2022 ATLAS, dated 2/20/2024:

12    Leased vehicle in Aug 2022, brand new. Approx. six

13    months later the vehicle exhibited a recurring noise when

14    braking which sounds like a grinding. The noise is also

15    accompanied with a gurgling sound when stopping

16    originating from the engine compartment on the driver's

17    side. ***Dealership said it might be break dust, they***

18    ***cleaned the area and test drove the vehicle. It worked***

19    ***fine for less than a day before the noise returned.***

20    Additionally, the car has surged when at a stop and

21    turned off unexpected with Auto Start/Stop off.

22    Dealership diagnosed the issues as related to the battery

23    from the factory but stated it is not yet with in the failure

24    limits to constitute a warranty replacement. Just to be

25    clear, the battery is failing but not at the rate the

26    manufacture would cover the replacement. Told by the

27    dealer to wait until the problem becomes worse so they

28

31

CLASS ACTION COMPLAINT

can replace it under warranty. (ID No. 11577211;

emphasis supplied)

145. NHTSA Complaint regarding a 2022 ATLAS, dated 8/29/2023:

My **sensors continue to beep when there is no**

**obstruction around the vehicle.  At times, this will also**

**cause the brakes to grind**.  When I take it in for

inspection, they are unable to find any malfunction

because this happens inconsistently.  **This puts myself**

**and others at risk because it is very distracting to the**

**driver**.  The vehicle has been inspected by the service

dealer, but they have not been able to reproduce the

problem.  Other lights have also popped up randomly...

the driver seat belt sign, when I did have my seat belt on

and the EPC sign while I drove down my street. (ID No.

11541560; emphasis supplied)

146. NHTSA Complaint regarding a 2022 ATLAS, dated 2/19/2024:

The **collision alert system is activated when we brake**

**and a terrible grinding noise occurs**. It seems that the

brake issues makes the collision system think the car is

not being stopped by the brakes. **The dealer refuses to do**

**anything about the issues because there is no nhtsa**

**recall. They claim the issue is humidity**. (ID No.

11572829; emphasis supplied)

### *Model Year 2023*

147. NHTSA Complaint regarding a 2023 ATLAS, dated 5/1/2023:

When the vehicle is wet (after car wash or when it rains),

the breaks start screeching and the breaking jerks

suddenly. **It's a terrible sound and terrible feeling**

32

CLASS ACTION COMPLAINT

1  *because it's unexpected and abnormal* (ID No.

2  11535286; emphasis supplied)

3  148.  NHTSA Complaint regarding a 2023 ATLAS, dated 12/15/2023:

4  The vehicle only has 15K miles and the breaks are

5  already producing a grinding sound.  Brought it back to

6  the dealership and they said that the pads and rotors are

7  measuring correct and that it was the humidity.  No

8  vehicle that we have ever experiences has had grinding,

9  so new and blamed weather.  They are stating that the

10  pads and rotors are made up of higher iron and corrosion

11  is happening quicker.  This is unacceptable and put extra

12  wear on the vehicle breaking components ultimately

13  putting breaking at risk. (ID No. 11560294)

14  149.  NHTSA Complaint regarding a 2023 ATLAS, dated 5/11/2024:

15  This is my second Volkswagen Atlas, that has the same

16  issues of breaks making loud squealing noise when I hit

17  the brakes. Volkswagen changed the brakes on my 2022

18  Atlas, then allowed me to trade it in for a 2023 Atlas. I

19  been having the same problem with the brakes and all the

20  dealers says is' ( Volkswagen is aware of the brake

21  problem and working on a solution)., however it has been

22  a ongoing issue for over a year. Just today in Walmart

23  parking lot located at [XXX] , I hit brakes and the brakes

24  squeal loud, *this is not just an issue because of the*

25  *noise, this is a safety issue*.  Now the dealer is telling me

26  the brakes are only under warranty for 24,000 miles and

27  my car has 34,000 miles, leaving me having to try to find

28  out what to do on my own.  My car note is $914.10, I

33

CLASS ACTION COMPLAINT

love Volkswagen, but I will never buy another one.

Imagine paying $914.10 per month for a vehicle that has

a safety issue and the dealer has been working on a

solution for over 2 years.  The break lights doesn't come

on, so the dealer stated it is only a annoying sound not a

safety issue, I believed these vehicles need a examination

or please examine mines, because if your brakes squeals,

something is wrong with the vehicle.  INFORMATION

REDACTED PURSUANT TO THE FREEDOM OF

INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (ID

No. 11588261; emphasis added)

## ii.   **Volkswagen Atlas Cross Sport**

### _Model Year 2021_

150.   NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated 11/22/2021:

The contact owns a 2021 Volkswagen Atlas Sport. The

contact stated that upon depression of the brake pedal, an

abnormal grinding noise would emit from the brakes. She

stated that the failure was intermittent and that no

warning lights had appeared on the instrument panel. **The**

**contact had called and taken the vehicle to several**

**dealers**; Fiesta Volkswagen (8201 Lomas Blvd NE,

Albuquerque, NM 87110); University Volkswagen

Mazda (5150 Ellison St NE, Albuquerque, NM 87109);

Garcia Volkswagen of Santa Fe (2560 Camino Edward

Ortiz, Santa Fe, NM 87507) **and each confirmed that**

**they are aware of the failure; however, there was no**

**remedy**. The brakes had been inspected by each dealer

34

CLASS ACTION COMPLAINT

1    and none were able to diagnose the failure. **The**
2    **manufacturer was then notified of the failure and was**
3    **informed that the grinding noise was normal.** No
4    further assistance was provided. The vehicle had yet to
5    be repaired. The failure mileage was approximately
6    16,000. (ID No. 11448695; emphasis supplied)

7    151.    NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated
8    1/14/2022:

9    With 10k miles and barely over a year, my atlas cross
10    sport needs new brakes and rotors! Brought to dealership
11    and opened a case with VW corporate but they won't
12    cover it because I've owned it more than a year.  The
13    dealership service manager even said they have had seen
14    this issue with other atlas cross sports. (ID No.
15    11449185)

16    152.    NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated
17    5/1/2021:

18    1) Brakes grinding and squealing  2) Known defects in
19    the 2021 brakes could reduce potential stopping distance
20    for affected vehicles.  3) Dealer replaced brakes  at
21    10,000 miles with exact same part and now we are
22    currently experience the same problems at 23,000 but
23    now dealer says there are unable to replace because the
24    issue will remain due to there not being a fixed
25    replacement. Dealer also recommend contacting the
26    manufacture customer care. There response acknowledge
27    the issue but there was nothing they could do due to there
28    not being a replacment part.  4) Yes, both by dealer and

35
CLASS ACTION COMPLAINT

third party mechanics who also explained there are currently no after market brakes that could replace the defective brakes and they would have to replace with the same part.   5) No warning just constant grinding and noise (ID No. 11493206; emphasis supplied)

153.    NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated 3/1/2021:

Brakes are extremely loud and not as good as they should be for such a behemoth of an suv. Leads to a lot of uncertainty especially in wet weather. **Any attempt to rectify this issue at the dealer leads to me being without a vehicle for HOURA for them to simply state no issue produced. (Also sound of advice of slamming on my breaks in drive and revers to get rid of the screech)** which doesn't help unfortunately I gave in and tried it.  The TPS system in the ACS is DANGEROUS. Multiple flat tires with not one sign of lost air or change in pressure. Once even on the freeway with my partner and toddler in the car.   Reverse camera and screen black outs, infotainment system is frustrating and not dependable. (ID No. 11500627; emphasis supplied)

154.    NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated 8/1/2022:

After having the car for less than a year the brakes started grinding metal on metal as well as an extremely loud screeching sound. I've taken it to a brake center and the dealership and there is nothing anyone can do as the brakes still show they are not ready to be replaced.

1    Volkswagen is aware of the issue specifically with new

2    Atlas models and will not do anything about it. (ID No.

3    11509387)

4    155.    NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated

5    1/20/2023:

6    I own my car for a 18 months and my brakes make a

7    grinding noise. I have taken in for service and they tell

8    me that's its normal. How can it be normal I have own

9    several new autos and never had I had this problem. (ID

10    No. 11527350)

11    156.    NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated

12    1/29/2024:

13    Since I purchased the vehicle the brakes sound like they

14    are bad, yet they are not bad. ***I was told at Volkswagon***

15    ***that they are aware of the issue in these SUV's but the***

16    ***only fix will void out my warranty if I choose to do it.*** If

17    this is a known problem with volswagon cross sports then

18    why is there not a solution to the problem that will not

19    jeopardize our warranty. I'm frustrated, the car sounds

20    ridiculous when the brakes are applied and ***how is one to***

21    ***know when they are actually bad if they always sound***

22    ***that way***. (ID No. 11568606; emphasis supplied)

23    157.    NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated

24    10/4/2021:

25    Car has a harsh loud metal grinding sound when brakes

26    are applied. Steering wheel vibration when brakes are

27    applied at medium/high speeds, more notable in declined

28    (down hill) roads. This has been ***reported to dealership***

37

CLASS ACTION COMPLAINT

*since we got the car brand new and they do nothing about it except to provide a scripted answer stating that the "car is safe" and/or that they cannot reproduce the issue.* (ID No. 11572088; emphasis supplied)

158.    NHTSA Complaint regarding a 2021 ATLAS CROSS SPORT, dated 6/2/2021:

SUV was purchased in May of 2021 at the Chapman VW dealership in Scottsdale, Arizona. Within several days of owning the Atlas, I noticed a grinding, shrieking noise coming from the brakes every time they were applied. I immediately **notified the dealer and they said that this was a common occurrence on the Atlas. They were aware of the issue but VW had not come up with a fix at that point in time. I brought the car in and they offered to replace the pads which were done. The problem continued**. Most recently, the noise and friction from the brakes has gotten infinitely worse. I contacted **VW executives in the US** and they once again said that they were **aware of the issue but that no reimbursement would be given** if I paid for new brakes myself, which I had to do. All participants, including the manager of Chapman VW, agree that this is a problem issue. However, there is no recall as of yet (one person there said one was forthcoming) and that they hear this problem from many Atlas owners. My question is why are they continuing to sell the car with the copper/rotor issue and why are they not fixing it nor reimbursing

CLASS ACTION COMPLAINT

people like me? Thank you. (ID No. 11574497; emphasis

supplied)

### *Model Year 2022*

159.  NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated 10/22/2022:

I leased the vehicle on 2/2022, months later I started

having braking problems. The dealer stated the brakes

squeals only in the morning, but ***the brakes squeals***

***throughout the day while I am driving***.  A water leaked

was fixed, however, the carpet remains in the car and on

back order, also the smell effects my pregnant wife.  ***If***

***we were told brakes would be squealing we wouldn't***

***have purchased the vehicle***. (ID No. 11497301;

emphasis supplied)

160.  NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated 12/28/2022:

Upon breaking its a grinding at time with squeaking. I've

taken concern 2-3 times now to dealership and they say

there's nothing wrong with breaks. They have given me

no resolution in fixing. It happens on a daily. Depending

how breaking happens. I've never owned a vehicle that

had this issue and for a dealership not to fix. (ID No.

11499298; emphasis supplied)

161.  NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated 1/19/2023:

The brakes make a grinding and squeaking sound after

every start up and continues either for many miles or

doesn't go away at all.  ***It is a safety issue because the***

1      *brakes sound horrible and this is not a normal*

2      *occurrence for a new car, i will not know if there is a*

3      *more serious issue with my brakes if its "normal" for*

4      *them to make this sound. The dealership has inspected*

5      *the vehicle and says everything is fine and that this is*

6      *normal... They have had numerous of the same vehicle*

7      *in the shop for the same issue.* This is not normal for a

8      brand new vehicle. No warning lamps are on. (ID No.

9      11505132; emphasis supplied)

10      162.    NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated

11    2/10/2023:

12      I have taken my car to the dealer and had them look at

13      the brakes. *Every time I press on the brakes it makes a*

14      *grinding sound almost as if the car is to heavy for the*

15      *brakes and skids a little. At Findlay Volkswagen they*

16      *tell me they are aware of the problem, but Volkswagen*

17      *has not approved any type of fix.* I have also talked to

18      other people with the same car everyone I have spoken

19      with that has this model car has the same issues with the

20      brakes. *To mne this is a safety issue if the car is to*

21      *heavy for the brakes.* (ID No. 11506664; emphasis

22      supplied)

23      163.    NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated

24    3/3/2022:

25      The brakes on this new car constantly grind and are

26      extremely noisy.  There have been a few occasions where

27      they barely stopped the car before we hit another car. *We*

28      *have brought the car in for service several times and the*

CLASS ACTION COMPLAINT

*dealer is unable to repair the vehicle. The service reps tell us this is a known problem with this car. Then they tell us they did not find any issues. they have claimed to have replaced the brakes but the issues still persist*. Lots of owners of this vehicle have the same concerns or worse.  This Atlas Cross Sport should not be allowed on California streets and highways. This really needs to be looked into (ID No. 11510003; emphasis supplied)

164.   NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated 10/1/2022:

I purchased my car in July 2022 and started having issues with it within 3 months. *I've have my car at the dealer 4 times for them to look at the brakes (grinding, scraping noise, squeaking that can be fetl in the pedal). I was told each time that the rotors and brake pads aren't compatible. VW knows about the problem but doesn't have a fix for it.* They say they clean the pads and that the car is safe to drive (really?).  … I only have 7,900 miles on my car and I just want it permanently fixed. (ID No. 11518484; emphasis supplied and edited for relevance)

165.   NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated 10/4/2022:  "Car make noises while breaking at times, *does not break at all if you dont push the pedal really hard*." (ID No. 11535512; emphasis supplied)

166.   NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated 10/1/2022:                                      ,

Purchased April 2022, and once the weather got cooler, brakes make a horrendous grinding, squeaky noise,

41

CLASS ACTION COMPLAINT

1    sounds like metal on metal. ***Have brought into***

2    ***dealership multiple times to no avail until a few months***

3    ***ago, confirmed that it is a known issue, but nothing***

4    ***they can do about it***. Said there is a build up of some

5    kind on the brakes that has to warm up before it will go

6    away, which is why it is prominent when weather is

7    cooler. My concern is that typically, grinding, squeaking

8    are usually signs that the brakes make have issues.

9    ***Dealer is saying brakes or fine, so do I have to wait for***

10    ***brakes to go out, run into something or someone before***

11    ***they can validate that brakes are not safe and are***

12    ***defective?*** (ID No. 11551307; emphasis supplied)

13    167.    NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated

14    7/1/2023:

15    The brakes began squealing and grinding about 6 months

16    ago, I had the car a little over a year and didn't

17    understand how the pads could be worn. I noticed that

18    when the grinding occurs it is a little slower to stop when

19    braking. ***I immediately took it to VW, they heard it,***

20    ***checked them and said they were basically brand new.***

21    ***If I wanted to change them it wouldn't be under***

22    ***warranty***. It continued so I took it to Mavis for a second

23    opinion. They told me the pads are like brand new as

24    well but it looked like there was grease all over the pads

25    and they cleaned them up. It didn't make a noise for

26    about 1 week and then back at it and the grinding and

27    slow braking is happening. ***This is a concern and I don't***

28    ***like driving the car because im nervous I won't be able***

42

CLASS ACTION COMPLAINT

1           *to brake*. I've looked online to see if there was anyone

2           else experiencing this and there are tons of threads stating

3           the same thing. How has VW not been required to correct

4           this? (ID No. 11553617; emphasis supplied)

5       168.   NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated

6 8/1/2023:

7           Brakes are making an awful grinding noise. Dealer says

8           there is nothing they can do about it. That's just "the way

9           they are" (ID No. 11560502; emphasis supplied)

10      169.   NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated

11 10/4/2023:

12           JUST PURCHACED MY ATLAS AROUND

13           SEPTEMBER, AFTER DRIVING IT A MONTH WE

14           NOTICED A LOAD SCREACH SOUND WEN

15           COMING TO A STOP, *I HAVE TAKEN IT TO TO0*

16           *VW DEALERS ONLY TO BE TOLD VOLKSWAGON*

17           *IS AWARE OF THE ISSUE AND THERE IS*

18           *NOTHING THEY CAN DO*, NOW THE BRAKES

19           GRIND AND IM NOT SURE HOW TO ADRESS

20           THIS ISSUE. THANK YOU . (ID No. 11561013;

21           emphasis supplied)

22      170.   NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated

23 1/5/2024:

24           Breaks vibrate and squeal when making a slow stop.

25           *Dealership stated was just debris, but it continues to do*

26           *this repeatedly*. Online this appears to be a known issue

27           throughout the Volkswagen brand and dealership give the

28           same reasoning, but the problem continues to persistent

CLASS ACTION COMPLAINT

for all owners who have reported it. ***The dealerships
appear to have been instructed to use the same
reasoning for the issues, but never repair/resolve the
issue***. (ID No. 11564057; emphasis supplied)

171.　NHTSA Complaint regarding a 2022 ATLAS CROSS SPORT, dated
11/5/2022:

I currently am leasing a 2022 Volkswagon Cross Atlas
Sport that currently has 26,000 miles on it. In October, I
noticed when I press on the brakes of my car, there is a
loud grinding and squealing sound both inside and
outside of the car. ***It is so bad, that I tend to not push the
brakes all the way down***. I brought my car to be serviced
to Jack Daniels Volkswagon in Fair Lawn, NJ. They said
they checked the brakes and they were in good condition
and didn't need to be replaced. I left there and the car
continued to squeal and grind when the brakes are
pressed. I brought the car back last week to have them
checked again and was told that they definitely hear the
noise, but the brakes are still fine and they will not repair
them. ***They are telling me there is nothing they can do
and that I have to live with the noise and the feeling of
the brakes being unsafe. I was upset and dissatisfied
with their answer so I tried to call Volkswagon
corporate and they told me the same answer, that I have
to live with it. The girl at the repair shop told me that
other Volkswagon cars are experiencing the same thing***
but there is no recall yet. She explained that it might be
possible to change the rotors and it may correct the noise.

44
CLASS ACTION COMPLAINT

All I would like is for someone from Vokswagon to approve the change of my rotors paid for by them to see if that will eliminate the noise or to rectify the situation. *I feel unsafe whereas I can't even fully press down on my brakes without the noise and grinding being heard in and out of the car*. I can't believe that I was told to live with it by the Volkswagon corporation and that noone would try and fix the manufacturers brake error. (ID No. 11565843; emphasis supplied)

### *Model Year 2023*

172.    NHTSA Complaint regarding a 2023 ATLAS CROSS SPORT, dated 1/2/2024:

UNKOWN  Brakes on brand new vehicle are exhibiting behavior that is not normal for a car of this size and relatively young age (miles). Measurably loud brake noise based on manufactures choice of materials in components leave concern on overall safety of brake system based on generally considered (except by dealer / manufacturer of course) unexpected behavior of vehicle braking system. (ID No. 11563187)

173.    NHTSA Complaint regarding a 2023 ATLAS CROSS SPORT, dated 5/22/2024:

MY CAR SHUTS OFF WHILE  DRIVING. ALSO I HAVE HAD BRAKE ISSUES. GRINDING NOISE AND LOUD NOISE.  *THEY RELACED THE BRAKE PADS THAT I HAD TO PAY FOR BECAUSE MANUFACTUR PADS WOULD HAVE CAUSE THE SAME ISSUE. NOW MY CAR IS SHAKING WHILE I*

45

CLASS ACTION COMPLAINT

1    ***BRAKE. THEY SAID I NEED NEW ROTORS***.  WITH

2    THE CAR SHUTTING OFF WHILE DRIVING IS MY

3    MAIN CONCERN. IT HAS SHUT OFF A TOTAL OF 8

4    TIME SINCE I HAVE OWNED IT. SHUT OFF

5    RADOMLY ON STREET, PARKING LOTS AND

6    FREEWAY GOING 65MPH. I HAVE MY GRAND

7    CHILDREN IN MY CAR A LOT. SO THERFORE,

8    THIS IS A HIGH RISK SAFETY CONCERN OF

9    MINE.. (ID No. 11590253)

10   **II.    COMMON CLASS ALLEGATIONS**

11          174.   Throughout the relevant period, Defendant has designed,

12   manufactured, distributed, imported, warranted, marketed, advertised, serviced,

13   sold, and leased the Class Vehicles. Upon information and belief, Defendant has

14   sold, directly or indirectly through dealers and other retail outlets, thousands of

15   Class Vehicles in California, New York, Illinois, and nationwide.

16          175.   Upon information and belief, Defendant knew or should have known

17   that the Vehicles are defective and are not fit for their intended purpose of

18   providing consumers with safe and reliable transportation. Nevertheless, Defendant

19   failed to disclose the Brake Defect to Plaintiffs and the Class Members at the time

20   of purchase or lease and thereafter.

21          176.   Under the Transportation Recall Enhancement, Accountability and

22   Documentation Act ("TREAD Act"), 49 U.S.C. §§ 30101-30170, and its

23   accompanying regulations, when a manufacturer learns that a vehicle contains a

24   safety defect, the manufacturer must promptly disclose the defect. 49 U.S.C. §§

25   30118(c)(1) & (2). If it is determined that the vehicle is defective, the manufacturer

26   must notify vehicle owners, purchasers, and dealers of the defect and must remedy

27   the defect. 49 U.S.C. §§ 30118(b)(2)(A) & (B). Upon information and belief,

28   Defendant also violated the TREAD Act by failing to timely inform NHTSA of the

Brake Defect and allowed the Vehicles to remain on the road with these defects. These same acts and omissions also violated various state consumer protection laws as detailed below.

177.    Defendant has long known that the Class Vehicles have a defective braking system. Defendant has exclusive access to information about the defects through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other sources of aggregate information about the problem. In contrast, the Brake Defect was not known or reasonably discoverable by Plaintiffs and Class Members prior to purchase and without experiencing the Brake Defect firsthand.

178.    Defendant owes a duty to disclose the Brake Defect to Plaintiffs and Class Members because Defendant has exclusive knowledge or access to material facts about the Vehicles that are not known or reasonably discoverable by Plaintiffs and Class Members until the defect has manifested; and because Defendant has actively concealed the Brake Defect from its customers. Improperly operating brakes on a vehicle are per se a safety defect.

179.    The Vehicles come with a New Vehicle Limited Warranty ("NVLW") which states that Volkswagen will cover any repairs to correct a manufacturer's defect in material or workmanship for 4 years or 50,000 miles, whichever occurs first.

180.    The NVLW "covers any repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects) … Repairs under this limited warranty are free of charge. Your Volkswagen dealer will repair the defective part or replace it with a new or remanufactured Genuine Volkswagen Part."

181.    But, as demonstrated by Plaintiffs' experiences and those of other Vehicle owners, Volkswagen is unwilling and/or unable to repair or correct the Brake Defect.

182.   Volkswagen employees at various levels, at both the dealership and corporate levels, have acknowledged awareness of the ongoing Brake Defect while admitting that no repair is available or offered.

183.   Volkswagen employees have even admitted that they have been directed to respond to consumer complaints regarding the Brake Defect in such a way as to avoid addressing, delay diagnosing, prevent recording, or otherwise obstruct resolution of their concerns.

184.   Where repairs have been attempted with respect to the Brake Defect they have been unsuccessful at permanently resolving the concerns, at least those which simply "repair the defective part or replace it with a new or remanufactured Genuine Volkswagen Part."

185.   If a Class Member sought to correct the Brake Defect by upgrading their braking system with non-"Genuine Volkswagen Parts" which would permanently resolve their issues, they put their Vehicle's NVLW in jeopardy and would thereby lose its coverage.

186.   Had Defendant informed Plaintiffs and the Class about the Brake Defect, Plaintiffs and the Class would not have purchased the Vehicles from Defendant, but rather would have purchased different vehicles. Defendant knowingly sold a defective product to Plaintiffs and the Class, without disclosing such defect, and now refuse to provide an adequate long-term remedy, repair, or restitution for their actions.

187.   Defendant's conduct described herein constitutes an omission of material fact and a deceptive business practice in violation of statutory and common law, including those of California, New York, and Illinois.

,

CLASS ACTION COMPLAINT

**A.     Tolling of the Statute of Limitations**

       **i.     Discovery Rule Tolling**

188.    Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time period of any applicable statutes of limitation.

189.    Among other things, neither Plaintiffs nor the other Class Members knew or could have known that the Class Vehicles are equipped with braking systems which are subject to the Brake Defect.

190.    Further, Plaintiffs and Class Members had no knowledge of the Brake Defect, and it occurred in a part of the vehicle that was not visible to consumers. Volkswagen attempted to squelch public recognition of the Brake Defect by propagating the falsehood that the Squealing, Grinding, Proximity Alert, and Erratic Function Defects (*see*, *supra*, ¶¶ 4-10) that drivers of Class Vehicles were experiencing was "normal." Accordingly, any applicable statute of limitation is tolled.

       **ii.     Fraudulent Concealment Tolling**

191.    Throughout the time period relevant to this action, Volkswagen concealed from and failed to disclose to Plaintiffs and the other Class Members vital information about the Brake Defect described herein.

192.    Volkswagen kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

193.    Throughout the Class Period, Volkswagen has been aware that the braking system it designed, manufactured, and installed in the Class Vehicles contained the Brake Defect, resulting in loud, distracting, and startling sounds, as well as unreliable and deficient function, when the brakes were put to regular and expected use, placing Plaintiffs and other drivers in unsafe situations.

194.    Despite its knowledge of the Brake Defect, Volkswagen failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and the other Class Members, even though, at any point in time, it could have disclosed the Brake Defect through individual correspondence, media release, a recall, or by other means.

195.    Plaintiffs and the other Class Members justifiably relied on Volkswagen to disclose the Brake Defect in the Class Vehicles that they purchased or leased, because the Brake Defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class Members.

196.    Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class Members have sustained as a result of the Brake Defect, by virtue of the fraudulent concealment doctrine.

### iii.    Estoppel

197.    Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of the unsafe and defective braking systems.

198.    Volkswagen knowingly concealed the true nature, quality, and character of the defective braking systems from consumers.

199.    Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

### B.    CLASS ACTION ALLEGATIONS

200.    Plaintiffs bring this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

### i.    Class Definitions

201.    The Class is defined as:

All persons in the United States and its territories who formerly or currently own(ed) or lease(d) one or more Class Vehicles.1

202. The California Subclass is defined as:

All current and former owners of Class Vehicles who reside, and/or purchased/leased a Class Vehicle, in California.

203. The New York Subclass is defined as:

All current and former owners of Class Vehicles who reside, and/or purchased/leased a Class Vehicle, in New York.

204. The Illinois Subclass is defined as:

All current and former owners of Class Vehicles who reside, and/or purchased/leased a Class Vehicle, in Illinois.

205. Excluded from the Class and Subclasses are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased Class Vehicles for the purpose of resale.

206. Plaintiffs reserve the right to amend or modify the Class and Subclass definitions.

**ii.        FRCP 23 Allegations**

207. <u>Numerosity</u>: Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the joinder of all members is impracticable. While the precise number of Class

,

---

1 Plaintiffs reserve the right to amend or modify their Class and Subclass definitions to include additional model years of Vehicles.

51
CLASS ACTION COMPLAINT

Members has yet to be determined, thousands of Class Vehicles have been purchased or leased nationwide and in each of California, New York, and Illinois.

208. <u>Commonality</u>: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class. These common questions of law and fact include, without limitation:

a. Whether the Vehicles and their braking systems are defectively designed;

b. Whether the Vehicles and their braking systems are defectively manufactured;

c. Whether the Vehicles and their braking systems are suitable for their intended use;

d. Whether the Vehicles' propensity to emit loud and high-pitched sounds (e.g. squeal, squeak, screech) would be considered material to a reasonable consumer;

e. Whether the Vehicles' propensity to emit loud sounds of metal-on-metal grinding or scraping would be considered material to a reasonable consumer;

f. Whether the Vehicles' propensity to trigger the proximity alert sensors, even to the point of engaging the automatic emergency brake to avoid an imminent impact, despite no object being nearby, would be considered material to a reasonable consumer;

g. Whether the Vehicles' propensity to suffer from inconsistent, decreased, or harsh braking function (e.g. slipping, "squishy," "spongy," or "grabby" braking) would be considered material to a reasonable consumer;

h. Whether, as a result of Volkswagen's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to

their detriment by purchasing Class Vehicles manufactured by Volkswagen;

i.  Whether Volkswagen was aware of the Brake Defect;

j.  When Volkswagen became aware of the Vehicles' propensity to emit loud and distracting sounds, suffer from diminished braking function, or otherwise experience symptoms related to the Brake Defect;

k.  Whether the Brake Defect constitutes an unreasonable safety risk;

l.  Whether Volkswagen breached express and/or implied warranties with respect to the Class Vehicles;

m.  Whether Volkswagen violated consumer protection laws in connection with its design, manufacturing, advertising, sale, or other activities related to the Vehicles and their braking system;

n.  Whether Volkswagen engaged in unfair, unlawful, or deceptive practices by advertising and selling Vehicles;

o.  Whether Plaintiffs and Class Members are entitled to actual damages as a result of Volkswagen's wrongful conduct;

p.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Volkswagen's wrongful conduct;

q.  Whether Volkswagen has a duty to disclose the Brake Defect to Plaintiffs and Class Members;

r.  When Volkswagen's duty to disclose the Brake Defect to Plaintiffs and Class Members arose; and

s.  Whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

CLASS ACTION COMPLAINT

209.   Predominance: Fed. R. Civ. P. 23(b)(3). These common questions predominate over any individual questions that might arise, including questions regarding entitlement to and amount of damages. Even if individual questions are required, answers to the above common questions will advance the litigation for all parties.

210.   Typicality: Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members because all purchased or leased Class Vehicles.

211.   Policies Generally Applicable to the Class: This class action is also appropriate for certification because Volkswagen has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

212.   Adequate Representation: Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

213.   Superiority: Fed. R. Civ. P. 23(b)(3). Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Volkswagen's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that

few Class Members could afford to seek legal redress for Volkswagen's misconduct.  Absent a class action, Class Members will continue to incur damages, and Volkswagen's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

214.   Volkswagen has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

215.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.   Whether the Vehicles and their braking systems are defectively designed;

b.   Whether the Vehicles and their braking systems are defectively manufactured;

c.   Whether the Vehicles and their braking systems are suitable for their intended use;

d.   Whether the Vehicles' propensity to emit loud and high-pitched sounds (e.g. squeal, squeak, screech) would be considered material to a reasonable consumer;

e.   Whether the Vehicles' propensity to emit loud sounds of metal-on-metal grinding or scraping would be considered material to a reasonable consumer;

f.    Whether the Vehicles' propensity to suffer from inconsistent, decreased, or harsh braking function (e.g. slipping, "squishy," "spongy," or "grabby" braking) would be considered material to a reasonable consumer;

g.    Whether, as a result of Volkswagen's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to their detriment by purchasing Class Vehicles manufactured by Volkswagen;

h.    Whether Volkswagen was aware of the Brake Defect;

i.    When Volkswagen became aware of the Vehicles' propensity to emit loud and distracting Squealing and/or Grinding noises, triggering the Proximity Alert sensors, as well as Erratic Function when the Vehicles' brakes are applied, or otherwise experience symptoms related to the Brake Defect (*see*, *supra*, ¶¶ 4-10);

j.    Whether the Brake Defect constitutes an unreasonable safety risk;

k.    Whether Volkswagen breached express and/or implied warranties with respect to the Class Vehicles;

l.    Whether Volkswagen violated consumer protection laws in connection with its design, manufacturing, advertising, sale, or other activities related to the Class Vehicles;

m.    Whether Volkswagen engaged in unfair, unlawful, or deceptive practices by advertising and selling Class Vehicles;

n.    Whether Plaintiffs and Class Members are entitled to actual damages as a result of Volkswagen's wrongful conduct;

o.    Whether Plaintiffs and Class Members are entitled to restitution as a result of Volkswagen's wrongful conduct;

56

CLASS ACTION COMPLAINT

p.   Whether Volkswagen has a duty to disclose the Brake Defect to Plaintiffs and Class Members;

q.   When Volkswagen's duty to disclose the Brake Defect to Plaintiffs and Class Members arose; and

r.   Whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

## CAUSES OF ACTION

## I.   BREACH OF EXPRESS WARRANTY

*U.C.C. § 2-313*

*(Cal. Com. Code § 2313; N.Y. UCC § 2-313; 810 Ill. Comp. Stat. 5/2-313)*

*(Plaintiffs, individually, and on behalf of their respective Subclasses)*

216.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

217.   Plaintiffs bring this cause of action individually and on behalf of their respective Consolidated States Subclasses.

218.   Plaintiffs and Class Members are "buyers" within the meaning of each applicable warranty statute.

219.   The Class Vehicles are "consumer goods" within the meaning of each applicable warranty statute.

220.   Volkswagen is a "manufacturer" and/or "seller" within the meaning of the warranty statutes.

221.   Plaintiffs and Class Members bought or leased Volkswagen vehicles equipped with Volkswagen's defective braking system.

222.   Volkswagen made express warranties to Plaintiffs and Class Members within the meaning of the warranty statutes.          ,

223.   In the course of selling and leasing the Class Vehicles, Volkswagen expressly warranted in writing that the vehicles were covered by certain warranties

57

in Volkswagen's "New Vehicle Limited Warranty" as described herein. This express warranty states that it "covers any repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects) … Repairs under this limited warranty are free of charge. Your Volkswagen dealer will repair the defective part or replace it with a new or remanufactured Genuine Volkswagen Part."

224. The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiffs and Class Members bought or leased the Class Vehicles.

225. Volkswagen breached its express warranties to repair defects in materials and workmanship of any part supplied by Volkswagen. Volkswagen has not repaired, and has been unwilling to reasonably repair, the Brake Defect.

226. Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because Volkswagen has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

227. Accordingly, recovery by Plaintiffs and the Class is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

228. Volkswagen was provided with notice of these issues by numerous customer complaints regarding the Brake Defect before or within a reasonable amount of time after the allegations of the Brake Defect became public.

229. In addition, the Plaintiffs named in this complaint have provided Volkswagen with notice of claims they make on behalf of themselves and similarly situated consumers. Although Volkswagen responded to the notice letter, it suggested only a possibility of individual resolution rather than Class-wide relief. Volkswagen's response makes clear that Plaintiffs' efforts for early resolution were futile.

CLASS ACTION COMPLAINT

230.   Plaintiffs were not required to notify Volkswagen of its breach and/or were not required to do so because affording Volkswagen a reasonable opportunity to cure any breach of written warranty would have been futile. Volkswagen was also on notice of the Brake Defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Vehicles' brakes or a component thereof, and through other internal sources.

231.   Plaintiffs and other Class Members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their Volkswagen vehicles, or the overpayment or diminution in value of their Class Vehicles.

232.   Plaintiffs and Class Members are also entitled to costs and reasonable attorneys' fees.

## II.   BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

*U.C.C. § 2-314*

*(Cal. Com. Code § 2314; N.Y. UCC Sec. 2-314; 810 Ill. Comp. Stat. 5/2-314)*

*(Plaintiffs, individually, and on behalf of their respective Consolidated States Subclasses)*

233.   Plaintiffs incorporate by reference and realleges the preceding paragraphs as if fully set forth herein.

234.   Plaintiffs bring this cause of action individually and on behalf of their respective Subclasses.

235.   Volkswagen is and was at all relevant times a merchant with respect to the Class Vehicles.

236.   A warranty that the Class Vehicles were in merchantable condition was implied by law in Class Vehicle transactions.  ,

237.   The Class Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used. Specifically,

they are inherently defective and dangerous due to the existence of the Brake Defect.

238.   Volkswagen was and/or is in actual or constructive privity with Plaintiffs and all Class Members.

239.   Plaintiffs had and continue to have sufficient direct dealings with Volkswagen and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. Volkswagen's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, *i.e.*, Plaintiffs and Class Members.

240.   Privity is not required to assert this claim because Plaintiffs and the Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers, franchisees, representatives, and agents.

241.   By extending express written warranties to end-user purchasers and lessees, brought itself into privity with Plaintiffs and all Class Members.

242.   Pursuant to each respective statute, the Class Vehicles owned or leased by Plaintiffs Class Members were defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.  The Class Vehicles were subject to an implied warranty of merchantability, did not comply with the warranty in that they were defective at the time of sale, and as a proximate result of the Brake Defect the Plaintiffs and Class Members sustained damages.

243.   The Class Vehicles left Volkswagen's facilities and control with a Defect caused by defective design incorporated into the manufacture of the Class Vehicles.  The Defect puts the consumers at a safety risk upon driving the Class Vehicles.  At all times relevant hereto, there was a duty imposed by law which

requires that a manufacturer or seller's product be reasonably fit for the ordinary purposes for which such products are used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between Volkswagen, on the one hand, and Plaintiffs and Class Members, on the other.

244. Notwithstanding its duty, at the time of delivery Volkswagen breached the implied warranty of merchantability in that the Class Vehicles braking systems were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used, and failed to conform to the standard performance of like products used in the trade.

245. Volkswagen has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

246. Volkswagen knew, or should have known, that the Class Vehicles posed a safety risk and contained the Brake Defect, and knew, or should have known, of these breaches of implied warranties prior to sale or lease of the Class Vehicles to Plaintiffs and Class Members.

247. As a direct and proximate result of Volkswagen's breaches of its implied warranties, Plaintiffs and Class Members bought the Class Vehicles without knowledge of the Brake Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

248. Plaintiffs and Class Members used the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Volkswagen or by operation of law in light of Volkswagen's unconscionable conduct.

CLASS ACTION COMPLAINT

249.   Volkswagen had actual knowledge of, and received timely notice regarding, the Brake Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

250.   In addition, Volkswagen received, on information and belief, numerous consumer complaints and other notices from customers advising of the Brake Defect associated with the braking systems equipped in the Class Vehicles.

251.   By virtue of the conduct described herein and through this Complaint, Volkswagen breached the implied warranty of merchantability.

252.   As a direct and proximate result of Volkswagen's breaches of its implied warranties, Plaintiffs and Subclass Members bought the Class Vehicles without knowledge of the Brake Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

253.   As a direct and proximate result of Volkswagen's breach of its implied warranties, Plaintiffs and Subclass Members have suffered economic damages, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their brake pads, brake rotors, or other components of their Vehicles' braking system. Volkswagen was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement or a recall.

## III.   **VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES**

*(Cal. Civ. Code §§ 1791.2 & 1793.2)*

*(California Plaintiffs individually, and on behalf of the California Subclass)*

254.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.                           ,

255.   California Plaintiffs bring this cause of action individually and on behalf of the California Subclass.

256.   Plaintiffs and Class Members are "buyers" within the meaning of the Song-Beverly Consumer Warranty Act ("SBCWA"). Cal. Civ. Code § 1791(b).

257.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

258.   Volkswagen is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

259.   Plaintiffs and Class Members bought or leased Volkswagen Class Vehicles equipped with Volkswagen's defective braking system.

260.   Volkswagen made express warranties to Plaintiffs and Class Members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2 as set forth herein.

261.   Specifically, in the course of selling and leasing the Class Vehicles, Volkswagen expressly warranted in writing that the vehicles were covered by certain warranties in Volkswagen's "New Vehicle Limited Warranty" as described herein. This express warranty states that it "covers any repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects) … Repairs under this limited warranty are free of charge. Your Volkswagen dealer will repair the defective part or replace it with a new or remanufactured Genuine Volkswagen Part."

262.   As set forth herein in detail, the Class Vehicles are inherently defective because they are equipped with Volkswagen's defective braking system which emits loud and distracting Squealing and/or Grinding sounds, triggers the Proximity Alert sensors, as well as Erratic Function , when the Vehicles' brakes are applied (*see*, *supra*, ¶¶ 4-10).

263.   The Brake Defect jeopardizes the safety of drivers and passengers of Class Vehicles, and other drivers on the road, and substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers like Plaintiffs and Class Members.

264.   Plaintiffs delivered the Class Vehicle to Volkswagen or its authorized repair facility to repair the Brake Defect but Volkswagen failed and continues to fail to make repairs to Plaintiffs' Class Vehicles under its Warranty.

265.   The braking system equipped in the Class Vehicles is covered by Volkswagen's New Vehicle Limited Warranty.

266.   The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiffs and Class Members bought or leased the Class Vehicles.

267.   Volkswagen breached its express warranties to repair defects in materials and workmanship of any part supplied by Volkswagen. Volkswagen has not repaired, and has been unwilling to reasonably repair, the Brake Defect.

268.   Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because Volkswagen has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

269.   Accordingly, recovery by Plaintiffs and the Class is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

270.   As a direct and proximate result of Volkswagen's breach of its express warranties, Plaintiffs and Class Members received goods containing a dangerous condition that substantially impairs the value of the goods sold to Plaintiffs and Class Members, and have been damaged in an amount to be determined at trial.

271.   Pursuant to Cal. Civ. Code. §§ 1793.2 & 1794, Plaintiffs and other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their Volkswagen vehicles, or the overpayment or diminution in value of their Class Vehicles.

272.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs and Class Members are also entitled to costs and reasonable attorneys' fees.

CLASS ACTION COMPLAINT

## IV.    <u>VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTIES</u>

*(Cal. Civ. Code §§ 1791.1 & 1792)*

*(California Plaintiffs individually, and on behalf of the California Subclass)*

273.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

274.    Plaintiffs bring this cause of action individually and on behalf of the California Subclass.

275.    Plaintiffs and California Subclass members are "buyers" within the meaning of the SBCWA. *See* Cal. Civ. Code § 1791(b).

276.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

277.    Volkswagen is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

278.    Volkswagen impliedly warranted to Plaintiffs and the other Class Members that its Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

279.    In reality, the Class Vehicles do not possess those qualities that a buyer would reasonably expect.

280.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label.

281.    The Class Vehicles are not suitable for the market, and would not pass without objection in the automotive industry and market because they are equipped

with Volkswagen's defective braking system which emits loud and distracting Squealing and/or Grinding sounds, triggering the Proximity Alert sensors, as well as Erratic Function, when the Vehicles' brakes are applied (*see*, *supra*, ¶¶ 4-10).

282.    Volkswagen's defective braking system makes the Class Vehicles unsuitable for safe driving. The Class Vehicles are not in merchantable condition, and are therefore, not fit for their ordinary purposes.

283.    Furthermore, Class Vehicles are not adequately labeled because the labeling fails to disclose the Brake Defect.

284.    Volkswagen breached the implied warranty of merchantability by manufacturing and selling Class Vehicles equipped with Volkswagen's defective braking system. Furthermore, the Brake Defect has caused Plaintiffs and other Class Members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

285.    The braking systems installed in the Class Vehicles were defective at the time they left the possession of Volkswagen, as set forth above. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in their braking system and present an undisclosed safety risk to drivers, occupants, and others. Thus, Volkswagen breached its implied duty of merchantability.

286.    Defendant cannot disclaim its implied warranties as it knowingly sold or leased a defective product.

287.    Volkswagen knew, or should have known, that the Class Vehicles posed a safety risk and were defective and knew, or should have known, of these breaches of implied warranties prior to sale or lease of the Class Vehicles to Plaintiffs and Class Members.                              ,

288.    Plaintiffs and the other Class Members have had sufficient direct dealings with Volkswagen and/or its authorized dealers, franchisees,

representatives, and agents to establish privity of contract between Volkswagen and Plaintiffs and each of the other Class Members. Volkswagen's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiffs and Class Members.

289.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers, and specifically, of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

290.    In addition, by extending express written warranties to end-user purchasers and lessees, Volkswagen brought itself into privity with Plaintiffs and all Class Members.

291.    Volkswagen has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

292.    Plaintiffs and Class Members used the Class Vehicles, its braking systems, in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Volkswagen or by operation of law in light of Volkswagen's unconscionable conduct.

293.    Volkswagen had actual knowledge of and received timely notice of the Brake Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

294.   In addition, Volkswagen received, on information and belief, numerous consumer complaints and other notices from customers advising of the Brake Defect associated with the braking systems installed in the Class Vehicles.

295.   As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods whose defective condition substantially renders them unsafe for their intended purpose and impairs their value to Plaintiffs and the other Class Members; Plaintiffs and Class Members have suffered damages and Volkswagen was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement or a recall.

296.   Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of or a buyback of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

297.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs and Class Members are also entitled to costs and reasonable attorneys' fees.

**V.   VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**
**(Cal. Civ. Code § 1750, et seq.)**
**(California Plaintiffs individually, and on behalf of the California Subclass)**

298.   Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

299.   California Plaintiffs bring this cause of action individually and on behalf of the California Subclass.

300.   Volkswagen's actions, representations and conduct violated the CLRA because they extend to transactions that were intended to result and which have resulted, in the sale or lease of goods to Plaintiffs and Class Members. Cal. Civ. Code § 1770.

301.   Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

302.   Plaintiffs and California Subclass Members are "consumers" as defined by Cal. Civ. Code § 1761(d).

303.   The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

304.   Volkswagen made numerous representations concerning the Class Vehicles' specifications that were misleading, including marketing and advertising the workmanship of Class Vehicles and the nature and extent of Volkswagen's Warranty.

305.   Volkswagen also omitted material facts about the Class Vehicles, namely the Brake Defect.

306.   In purchasing or leasing Class Vehicles, Plaintiffs and Class Members were deceived by Volkswagen's failure to disclose that the Class Vehicles contain the Brake Defect, resulting in expensive damage for which Volkswagen will not provide coverage under its express or implied warranties.

307.   Volkswagen violated the CLRA in at least the following respects:

   a.   in violation of § 1770(a)(5), Volkswagen represented that the Class Vehicles have approval, characteristics, and uses or benefits which they do not have;

   b.   in violation of § 1770(a)(7), Volkswagen represented that the Class Vehicles are of a particular standard, quality or grade, when they are of another;

   c.   in violation of Section 1770(a)(9), Volkswagen has advertised the Class Vehicles as safe with the intent not to sell them as advertised; and

   d.   in violation of § 1770(a)(16), Volkswagen represented that the goods have been supplied in accordance with previous representations, when they were not.

308.   Volkswagen violated the CLRA by representing the Class Vehicles were safe and free of defects when they were not and Defendant knew, or should have known, that the representations and advertisements were false and misleading.

309.   Volkswagen had a duty to disclose the Brake Defect because Volkswagen had exclusive knowledge of the Brake Defect prior to making sales and leases of Class Vehicles and because Volkswagen made partial representations about the quality of Class Vehicles but failed to fully disclose that the Brake Defect plagues Class Vehicles.

310.   Specifically, Volkswagen was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because:

a.    Volkswagen was in a superior position to know the true state of facts about the Brake Defect—a defect that can pose a safety risk—and associated repair costs in the Class Vehicles;

b.    Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles have a defect that affects operability of Class Vehicles and creates safety concerns until manifestation of the Brake Defect;

c.    Volkswagen knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the Brake Defect until manifestation of the Brake Defect; and

d.    Volkswagen made incomplete representations about the safety and reliability of Class Vehicles generally, while withholding material facts from Plaintiffs and Class Members that contradicted these representations.

311.   The facts concealed or not disclosed by Volkswagen to Plaintiffs and Class Members are material in that a reasonable consumer would have considered

them to be important in deciding whether to purchase or lease Class Vehicles or pay a lesser price.

312.   Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or they would have paid less.

313.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than a comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

314.   Volkswagen has known of the defective braking system since at least when it began selling Class Vehicles which generated numerous consumer complaints made to the NHTSA. However, Volkswagen continued to allow unsuspecting new and used consumers to buy or lease the Class Vehicles and allowed them to continue driving dangerous vehicles.

315.   Defendant intended that Plaintiffs and Class Members would, in the course of their decision to expend monies in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the quality of the Class Vehicles and its braking system with respect to materials, workmanship, design and/or manufacture.

316.   Plaintiffs and Class Members reasonably relied on Volkswagen's misrepresentations and omissions in purchasing or leasing Class Vehicles.

317.   Plaintiffs and Class Members have been damaged as a proximate result of Defendant's violations of the CLRA and have suffered actual damages as a direct and proximate result of purchasing or leasing defective Class Vehicles.

318.   Prior to filing this Complaint, Plaintiffs served notice letters on Volkswagen, notifying Volkswagen of Plaintiffs' damages and the Brake Defect in their Class Vehicles, in compliance with Cal. Civ. Code §1782(a). Plaintiffs have

1  made pre-suit attempts to remedy the Brake Defect in their Class Vehicles, to no
2  avail.

3      319.   Under Cal. Civ. Code § 1780(a), Plaintiffs and Class Members seek
4  actual damages, an order enjoining Volkswagen from further engaging in the
5  unfair and deceptive acts and practices alleged herein, restitution, attorney's fees
6  and costs.

7      320.   Under Cal. Civ. Code § 1780(b), Plaintiffs and Class Members seek
8  an additional award against Volkswagen of up to $5,000 for each Class Member
9  who qualifies as a "senior citizen" or "disabled person" under the CLRA.
10  Volkswagen knew or should have known that its conduct was directed to one or
11  more Class Members who are senior citizens or disabled persons. Volkswagen's
12  conduct caused one or more of these senior citizens or disabled persons to suffer a
13  substantial loss of property set aside for retirement or for personal or family care
14  and maintenance, or assets essential to the health or welfare of the senior citizen or
15  disabled person. One or more Class Members who are senior citizens or disabled
16  persons are substantially more vulnerable to Volkswagen's conduct because of age,
17  poor health or infirmity, impaired understanding, restricted mobility, or disability,
18  and each of them suffered substantial physical, emotional, or economic damage
19  resulting from Volkswagen's conduct.

20      321.   Pursuant to Cal. Civ. Code § 3345, Plaintiffs and Class Members seek
21  an award of trebled damages on behalf of all senior citizens and disabled persons
22  comprising the Class as a result of Volkswagen's conduct alleged herein.

23      322.   Pursuant to CLRA Section 1780(a)(4), Plaintiffs and Class Members
24  also seek punitive damages against Volkswagen because it carried out
25  reprehensible conduct with willful and conscious disregard of the rights and safety
26  of others, subjecting Plaintiffs and Class Members to potential cruel and unjust
27  hardship as a result. *See* Cal. Civ. Code § 1780(a)(4). Volkswagen intentionally
28  and willfully deceived Plaintiffs on life-or-death matters, and concealed material

facts that only Volkswagen knew. Volkswagen's unlawful conduct likewise constitutes malice, oppression, and fraud warranting exemplary damages under Cal. Civ. Code § 3294.

323. Plaintiffs further seek any other just and proper relief available under the CLRA.

## VI. <u>VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW</u>
### *(Cal. Bus. Prof. Code §§ 17200, et seq.)*
### *(California Plaintiffs individually, and on behalf of the California Subclass)*

324. Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

325. California Plaintiffs bring this claim on behalf of themselves and California Subclass.

326. The UCL broadly prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

327. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

328. Volkswagen has engaged in "unfair" business practices and/or acts by falsely representing the qualities of its express and implied warranties for Class Vehicles; by misrepresenting the workmanship of its Class Vehicles; by failing to disclose the Brake Defect to consumers; and by refusing to provide warranty coverage for the Brake Defect.

329. The acts and practices alleged herein are unfair because they caused Plaintiffs and Class Members, and reasonable consumers like them, to believe that Volkswagen was offering something of value that did not, in fact, exist. Volkswagen intended for Plaintiffs and Class Members to rely on its

73

representations. As a result, purchasers and lessees, including Plaintiffs, reasonably perceived that they were receiving Class Vehicles with certain benefits. This perception induced reasonable purchasers to purchase or lease Class Vehicles, which they would not otherwise have done had they known the truth.

330.    The gravity of the harm to Plaintiffs and Class Members resulting from these unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Volkswagen for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Volkswagen engaged in unfair business practices within the meaning of the UCL.

331.    A business act or practice is also "fraudulent" under the UCL if it is likely to deceive members of the consuming public. Volkswagen engaged in a uniform course of conduct which was intended to, and did in fact, deceive Plaintiffs and Class Members and induced them into buying Class Vehicles. Volkswagen's course of conduct and marketing practices were fraudulent within the meaning of the UCL because they deceived Plaintiffs, and were likely to deceive members of the Class, into believing that they were entitled to a benefit that did not, in fact, exist. Volkswagen's misrepresentations are likely to deceive and have deceived the public.

332.    A business act or practice is also "unlawful" under the UCL if it violates any other law or regulation. Volkswagen has violated the CLRA, and other laws as set forth herein.

333.    Volkswagen has engaged in unfair competition and unfair, unlawful and fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Vehicles suffer from the Brake Defect (and the costs, risks, and diminished value of the Vehicles as a result of this problem).

334.    Volkswagen should have disclosed the Brake Defect and this information because Volkswagen was in a superior position to know the true facts

related to the Brake Defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the Brake Defect. Plaintiffs and Class Members relied upon Volkswagen's express representations and promises, as well as omissions, regarding the workmanship of and the warranties for the Class Vehicles, believed them to be true, and would not have agreed to purchase or lease Class Vehicles had they known the truth about the Brake Defect.

335.    Therefore, the omissions and acts of concealment, fraud, and deceit by Volkswagen pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers.

336.    Volkswagen had a duty to disclose the Brake Defect because Volkswagen had exclusive knowledge of the Brake Defect prior to making sales and leases of Class Vehicles and because Volkswagen made partial representations about the quality of Class Vehicles, but failed to fully disclose that the Brake Defect plagues Class Vehicles.

337.    In failing to disclose that Class Vehicles contain the Brake Defect, the true nature of the quality and workmanship of Class Vehicles, and suppressing other material facts from Plaintiffs and Class Members, Volkswagen breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class Members.

338.    Plaintiffs and Class Members acted reasonably when they relied on Volkswagen's misrepresentations and omissions in purchasing or leasing Class Vehicles—reasonably believing these were true and lawful.

339.    The injuries suffered by Plaintiffs and the Class Members greatly outweigh any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class Members should have reasonably avoided.                                                ,

340.    Through its fraudulent, unfair, and unlawful acts and practices, Volkswagen has improperly obtained money from Plaintiffs and the Class.

341.   Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Volkswagen relating to the Brake Defect in Class Vehicles and from violating the UCL in the future by selling Class Vehicles with the Brake Defect.

342.   Plaintiffs and Class Members also seek to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, require notice of this dangerous condition be given to the Class, and all other relief allowed under Cal. Bus. & Prof. Code § 17200.

## VII.   VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. Gen. Bus. Law § 349)
### (New York Plaintiffs individually, and on behalf of the New York Subclass)

343.   Plaintiffs incorporate by reference and re-alleges the preceding paragraphs as if fully set forth herein.

344.   New York Plaintiffs bring this cause of action individually and on behalf of the New York Subclass.

345.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

346.   By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective braking system installed in them, Defendants engaged in deceptive acts or practices prohibited by the New York General Business Law § 349, including: (i) representing that its vehicles and their braking system had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles and braking system are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

347.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

348.   In the course of their business, Defendant failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective braking system installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

349.   Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the defective braking system installed in them.

350.   Complaints to the NHTSA, which Volkswagen monitors with respect to its vehicles, show that drivers were reporting the problem with the Vehicles' braking systems as early as 2021. Further Volkswagen uses a variety of other means to track data about how its vehicles are performing after they are sold, including through tracking complaints, warranty claims, replacement parts data, and other aggregated data sources.

351.   Defendant's unfair or deceptive acts or practices, including these concealments, and omissions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of Class Vehicles and/or the defective braking system installed in them, and the true value of the Class Vehicles.

352.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective braking system installed in them with an intent to mislead Plaintiffs and Class Members.

353.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendant concealed the dangers and risks posed by the

CLASS ACTION COMPLAINT

defective braking system installed in the Class Vehicles, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving dangerous vehicles.

354. Defendant owed Plaintiffs and the Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective braking system installed in them because Defendant: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiffs and Class Members that contradicted these representations.

355. Defendant's failure to disclose and active concealment of the dangers and risks posed by the defective braking system in Class Vehicles were material to Plaintiffs and Class Members. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

356. Plaintiffs and the Class Members suffered ascertainable loss caused by Defendant's misrepresentations and its failure to disclose material information. Had they been aware of the defective braking system installed in the Class Vehicles, Plaintiffs and the Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class Members did not receive the benefit of their bargain as a result of Defendant's misconduct.

357. Defendant's violations present a continuing risk to Plaintiffs, the Class Members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.      ,

358. Plaintiffs and the other Class Members were injured as a result of Defendant's conduct in that Plaintiffs and the other Class Members overpaid for

their Class Vehicles and did not receive the benefit of their bargain, and their Class
Vehicles have suffered a diminution in value. These injuries are the direct and
natural consequence of Volkswagen's misrepresentations and omissions.

## VIII. <u>VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350</u>

*(N.Y. Gen. Bus. Law § 350)*

*(New York Plaintiffs individually, and on behalf of the New York
Subclass)*

359.   Plaintiffs reference and reallege the paragraphs above as if fully set
forth herein.

360.   New York Plaintiffs bring this cause of action individually and on
behalf of the New York Subclass.

361.   New York's General Business Law § 350 makes unlawful "[f]alse
advertising in the conduct of any business, trade or commerce[.]" False advertising
includes "advertising, including labeling, of a commodity … if such advertising is
misleading in a material respect," taking into account "the extent to which the
advertising fails to reveal facts material in the light of …representations [made]
with respect to the commodity…." N.Y. Gen. Bus. Law § 350-a.

362.   Volkswagen caused to be made or disseminated through New York,
through advertising, marketing, and other publications, statements that were untrue
or misleading, and which were known, or which by the exercise of reasonable care
should have been known to Volkswagen, to be untrue and misleading to
consumers, including Plaintiffs and the other Class Members.

363.   Volkswagen has violated N.Y. Gen. Bus. Law § 350 because the
misrepresentations and omissions regarding the Class Vehicles and/or the defective
braking system installed in them, as described above, which was material and
likely to deceive a reasonable consumer.              ,

364.   Plaintiffs and the other Class Members have suffered injury, including
the loss of money or property, as a result of Volkswagen's false advertising. In

purchasing or leasing their Class Vehicles, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, quality, functionality, and reliability of the Class Vehicles and/or the defective braking system installed in them. Volkswagen's representations turned out to be untrue because the defects described within renders the Class Vehicles and/or the panoramic braking system installed in them to spontaneously shatter, as described hereinabove. Had Plaintiffs and the other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

365.    Accordingly, Plaintiffs and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of the bargain for their Class Vehicles, which have also suffered diminution in value.

366.    Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful and/or deceptive practices. Plaintiffs and the other Class Members are also entitled to recover their actual damages or $500, whichever is greater. Because Volkswagen acted willfully or knowingly, Plaintiffs and the other Class Members are entitled to recover three times actual damages, up to $10,000.

## IX.    VIOLATIONS OF ILLINOIS CONSUMER FRAUD & DECEPTIVE PRACTICES ACT

*(815 Ill. Comp. Stat. 505/1, et seq.)*

*(Illinois Plaintiffs individually, and on behalf of the Illinois Subclass)*

367.    Plaintiffs incorporate by reference and realleges the preceding paragraphs as if fully set forth herein.

368.    Illinois Plaintiffs bring this cause of action individually and on behalf of the Illinois Subclass.

CLASS ACTION COMPLAINT

369.   Plaintiffs assert a claim under Illinois's Consumer Fraud and Deceptive Business Practices Act ("CFDBPA"), which makes it unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' … in the conduct of any trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.[2]

370.   Volkswagen developed, manufactured, marketed and sold the defective Class Vehicles containing the Brake Defective braking systems as alleged herein. Volkswagen developed, manufactured, marketed and sold the Class Vehicles despite knowledge of the Brake Defect and that the Class Vehicles posed a serious safety risk to consumers like Plaintiffs and Subclass members.

371.   Volkswagen's actions and omissions in selling and leasing its Class Vehicles as safe for the road despite knowing that the Class Vehicles posed a serious safety risk to consumers, failing to disclose the Brake Defect and safety risks known to Volkswagen but hidden from the consumer, and Volkswagen's

---

[2] Illinois's CFDBPA states, in relevant part, that "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: …

(2) causes likelihood of confusion or of misunderstanding as to the … certification of goods …;

(5) represents that goods … have … characteristics … uses, [or] benefits … that they do not have…;

(7) represents that goods … are of a particular standard, quality, or grade … if they are of another; …

(9) advertises goods or services with intent not to sell them as advertised; … [or]

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a).

CLASS ACTION COMPLAINT

knowing concealment of the defective Class Vehicles' unreasonable safety risks, constitute "deception fraud, false pretense, false promise, [and] misrepresentation" as well as "concealment, suppression [and] omission of a[] material fact, with intent that [Plaintiffs and Class Members] rely upon the concealment, suppression or omission of such material fact" in violation of the CFDBPA. 815 ILCS 505/2. Volkswagen's unfair and deceptive practices alleged herein also constitute several practices prohibited by the Uniform Deceptive Trade Practices Act, including subparts (2), (5), (7), (9), and (12). 815 ILCS 510/2. Volkswagen's practices are illegal, unfair or deceptive acts or practices in the conduct of trade or commerce and are inherently deceptive. Volkswagen's practices alleged herein offend public policy and are immoral, unethical, oppressive, and unscrupulous.

372. Volkswagen violated the CFDBPA not only when it sold the Class Vehicles as safe for use by consumers, but also when it failed to disclose to Plaintiffs and Subclass members that the Class Vehicles had a Defect that posed a serious safety risk to consumers and the public, despite Volkswagen's knowledge that the Class Vehicles posed such a risk to Plaintiffs and Subclass members.

373. Volkswagen engaged in deceptive trade practices, in violation of the CFDBPA, including by creating a likelihood of confusion or misunderstanding as to the characteristics, quality, uses, benefits, approval, or certification of the Class Vehicles, using deceptive representations in connection with the Class Vehicles, representing that the Class Vehicles have approval, characteristics, uses, benefits, or qualities that they do not have, representing that Class Vehicles meet a particular standard, quality, or grade when they are not, advertising Class Vehicles as having certain qualities, uses, and benefits even though Volkswagen intended to sell them other than as advertise, knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service regarding the Brake Defect and defective braking systems, and by selling new Class Vehicles

CLASS ACTION COMPLAINT

without disclosing the Brake Defect which constitutes material damage to a motor vehicle.

374.   Volkswagen's deceptive trade practices were designed to induce Plaintiffs and Subclass members to purchase the Class Vehicles containing the Brake Defect and to avoid the cost of replacing, repairing or recalling the Class Vehicles already in use across the United States.  Volkswagen's violations of the CFDBPA were designed to conceal, and Volkswagen failed to disclose, material facts about the Brake Defect and unreasonable safety risks in the Class Vehicles in order to induce Plaintiffs and Subclass members to purchase the Class Vehicles and in order to avoid the business cost of replacing, repairing and/or recalling the Class Vehicles.

375.   By engaging in the unfair and deceptive conduct described herein, Volkswagen actively concealed and failed to disclose material facts about the defective Class Vehicles.

376.   The omissions set forth above regarding the Class Vehicles are omissions of material facts that a reasonable person would have considered important in deciding whether or not to purchase a Class Vehicle.  Indeed, no reasonable consumer would have knowingly bought or leased a Class Vehicle for use on the road, or otherwise, if that consumer had known that the product had a serious Defect that posed a safety risk and that the Brake Defect caused the Class Vehicles to lose power in the normal course of use.

377.   Volkswagen's acts were intended to be deceptive and/or fraudulent, namely to market, distribute and sell the Class Vehicles and to avoid the expense of replacing, repairing and/or recalling Class Vehicles across the United States.

378.   Plaintiffs and Subclass members suffered injury in-fact as a direct result of Volkswagen's violations of the CFDBPA in that they have paid a premium for Class Vehicles that are equipped with Volkswagen's defective braking system and that pose an immediate safety risk to consumers and the public.

Plaintiffs and Illinois Subclass members did not receive the benefit of the bargain they made when purchasing or leasing their Class Vehicles.

379.    Plaintiffs and Illinois Subclass members have also been denied the use of their Class Vehicles, expended money on replacement and repairs, and suffered unreasonable diminution in value of their Class Vehicles as a result of Volkswagen's conduct alleged herein.

380.    Had Volkswagen disclosed the true quality, nature and defects of the Class Vehicles, Plaintiffs and Subclass members would not have purchased the Class Vehicles or would have paid less.

381.    To this day, Volkswagen continues to violate the CFDBPA by concealing the defective nature of the Class Vehicles in failing to notify customers, in failing to issue a recall, and in collecting the profits from costly repairs and replacements.

382.    Volkswagen owed Plaintiffs and Subclass Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective braking system installed in them because Volkswagen: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs and Subclass Members; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff and Subclass Members that contradicted these representations.

383.    Plaintiffs and Subclass Members reasonably relied on Volkswagen's misrepresentations and omissions, and expected that the Class Vehicles would not be equipped with a defective braking system, such that it would render the Class Vehicles unsafe and not fit for their ordinary use. Further, Plaintiff and Subclass Members reasonably expected Volkswagen would honor its warranty obligations, as represented to them at the time they purchased or leased their Class Vehicles.

CLASS ACTION COMPLAINT

384.   Prior to filing this Complaint, on June 4, 2024, Plaintiffs served demand letters on Volkswagen, notifying Volkswagen of Plaintiffs' damages and the Brake Defect in their Class Vehicles and demanding relief, in compliance with 815 ILCS 505/10a.

385.   Plaintiffs and Subclass Members have been damaged by these violations of the CFDBPA. The damages should be trebled, and Plaintiffs and Subclass members should be allowed to recover attorneys' fees pursuant to 815 ILCS 505/10a.

## X.    **FRAUD/FRAUDULENT CONCEALMENT**

### *(Plaintiffs, individually, and on behalf of the Class)*

386.   Plaintiffs incorporate by reference and realleges the preceding paragraphs as if fully set forth herein.

387.   This claim is brought by Plaintiffs individually and on behalf of Class Members.

388.   Volkswagen concealed and suppressed material facts concerning the performance and quality of the Class Vehicles—namely, the Brake Defect—and the quality of the Volkswagen brand. Specifically, Volkswagen knew (or should have known) of the Brake Defect but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Volkswagen did so to boost sales and leases of Class Vehicles.

389.   Plaintiffs and Class Members had no way of knowing that Volkswagen's representations were false and gravely misleading, or that Volkswagen had omitted imperative details. Plaintiffs and Class Members did not, and could not, unravel Volkswagen's deception on their own.

390.   Volkswagen had a duty to disclose the true performance of Class Vehicles and the Brake Defect because knowledge thereof and the details related thereto were known and/or accessible only to Volkswagen; Volkswagen had superior knowledge and access to the facts; and knew the facts were not known to,

or reasonably discoverable, by Plaintiffs and the Class. Volkswagen also had a duty to disclose because they made many general affirmative representations about the qualities of the Class Vehicles.

391.    On information and belief, Volkswagen still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Brake Defect and the performance and quality of Class Vehicles.

392.    Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. The actions of Plaintiffs and Class Members were justified. Volkswagen was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or Class Members.

393.    Plaintiffs and Class Members relied upon Volkswagen's representations and omissions regarding the quality of Class Vehicles and the Brake Defect in deciding to purchase or lease Class Vehicles.

394.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the price paid for their Class Vehicles. Plaintiffs and Class Members would have paid less for Class Vehicles had they known about the Brake Defect, or they would not have purchased or leased Class Vehicles at all.

395.    Accordingly, Volkswagen is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

396.    Volkswagen's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being, to enrich Volkswagen. Defendant's conduct warrants an assessment of punitive damages in an amount

sufficient to deter such conduct in the future, which amount is to be determined according to proof.

397.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Volkswagen has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Brake Defect. Volkswagen has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Volkswagen's misconduct alleged herein, Plaintiffs and Class Members were not receiving Vehicles of the quality, nature, fitness, or value that had been represented by Volkswagen, and that a reasonable consumer would expect.

398.    Volkswagen has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Volkswagen to retain these profits and benefits, and Volkswagen should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## **REQUESTS FOR RELIEF**

399.    WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class and Subclasses proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

        a.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class and Subclass Representatives and appointing the undersigned counsel as Class Counsel;    ,

CLASS ACTION COMPLAINT

b. Ordering Volkswagen to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Class and Subclasses;

c. Ordering Volkswagen to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class and Subclasses;

d. Ordering Volkswagen to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class and Subclass;

e. Awarding injunctive relief as permitted by law or equity, including enjoining Volkswagen from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

f. Ordering Volkswagen to pay attorneys' fees and litigation costs incurred by Plaintiffs for the benefit of the Class and Subclasses;

g. Ordering Volkswagen to pay both pre- and post-judgement interest on any amounts awarded; and

h. Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

400. Plaintiffs, individually and all others similarly situated, hereby demand a trial by jury as to all matters so triable.

,

CLASS ACTION COMPLAINT

| | |
|---|---|
| 1 | Dated:  October 4, 2024 |

Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

*/s/Leland H. Belew*
Leland H. Belew (SBN 293096)
lbelew@milberg.com
227 West Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 312-224-8685
Facsimile: 865-522-0049

Alex R. Straus (SBN 321366)
astraus@milberg.com
280 S. Beverly Drive, PH Suite
Beverly Hills, California 90212
Telephone: 866-252-0878
Facsimile:  865-522-0049

Mitchell Breit*
mbreit@milberg.com
405 E. 50th Street
New York, New York 10022
Telephone: 630-796-0903
Facsimile: 865-522-0049

*Attorneys for Plaintiff and the Proposed Class*

*\*Pro hac vice forthcoming*

,

82

CLASS ACTION COMPLAINT